UNITED STATES of America,
Plaintiff/Appellee,

v.

Rene BLOCH and Hector Rivera,
Defendants/Appellants.

No. 81–1424.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 4, 1982.

Decided Oct. 28, 1982.

John E. Meyers, Los Angeles, Cal., for defendants/appellants.

Lourdes Baird, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff/appellee.

Before ANDERSON, PREGERSON and NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

Appellants Bloch and Rivera appeal from convictions on one count of conspiracy in violation of 18 U.S.C. § 371 (1966) and six counts of accepting unlawful payments in violation of 29 U.S.C. § 186(b)(1) (1978). Appellants were convicted of demanding and accepting unlawful payments from pro- moters seeking visas for Latin American musicians to perform in the United States.

Appellants were both employed by the American Federation of Musicians (AFM), Local 47. Their duties included overseeing all nightclubs within a certain geographical area to insure that union rules with respect to musicians were being followed at those clubs.

In order to obtain visas for foreign musi- cians, promoters and employers must obtain AFM approval of all visa petitions. As a condition for such approval, AFM requires promoters and employers to agree to hire local union musicians on a "one to one" basis with the foreign musicians. AFM re- lied on Bloch and Rivera as field represent- atives to enforce and monitor compliance with these "one to one" agreements in the Local 47 area.

Philip Karlin was the head of Marcalan, Inc. (Marcalan), a company which arranged for Latin American musicians to perform in the United States. From late 1970 or early 1971 until April or May 1973, Karlin paid $1,000 every month in exchange for Bloch's and Rivera's assuring AFM approval of visa petitions Marcalan submitted on behalf of alien bandleaders.

Arturo Guerra promoted Latin American dances and brought Latin American musi- cians to the United States from January 1973 up to the time of the Bloch/Rivera trial. On eleven separate occasions, Guerra paid $500 and $750 in cash to Bloch and Rivera in exchange for an assurance of approved visa petitions without enforce- ment of the AFM "one to one" agreement. In 1977, Guerra agreed to cooperate with an FBI investigation by wearing a body tape recorder at his next meeting with Rivera. On September 13, 1977, in Guerra's office, Guerra gave Rivera two $50 bills which were placed inside an airline ticket jacket. The conversation between Guerra and Riv- era was recorded and introduced at trial.

*Merger of Conspiracy and Substantive Counts*

Appellants contend that the government should have been precluded

from charging them with conspiracy because the alleged conspiracy resulted in substantive crimes which were charged in the same indictment. It is clear, however, that a conspiracy to commit a substantive offense and the commission of the substantive offense itself are separate and distinct offenses. *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1181, 90 L.Ed. 1489 (1946). Thus, the district court did not err in convicting appellants of both conspiracy to demand and accept illegal payments and the substantive offense of demanding and accepting illegal payments.

*Sufficiency of the Evidence of a Single Conspiracy*

Appellants also contend that the evidence does not show a single conspiracy extending from 1968 to 1977, but rather two conspiracies, one involving the payments by Karlin from 1968 to 1973, and a second involving the payments by Guerra from 1973 to 1977. Appellants argue that prosecution for the first conspiracy was barred by the statute of limitations.

 The standard of review for sufficiency of the evidence of a single conspiracy is whether any rational trier of fact could have found a single conspiracy on the evidence presented. *United States v. Kenny,* 645 F.2d 1323, 1335 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). The standard for determining the existence of a single conspiracy is whether there was "one overall agreement" among the parties to carry out the objectives of the conspiracy. *United States v. Kearney,* 560 F.2d 1358, 1362 (9th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977); *accord United States v. Jabara,* 618 F.2d 1319 (9th Cir.), *cert. denied,* 446 U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845 (1980); *United States v. Zemek,* 634 F.2d 1159 (9th Cir.1980).

 In the instant case, the conspiracy involved the same scheme, the same central actors, the same activities, and the same goals. The conspiracy thus consisted of "one overall agreement" between appellants to use their positions with Local 47 to demand payments from promoters and employers seeking visas for Latin American musicians in exchange for ignoring violations of union rules and agreements.

 A single overall agreement need not be manifested by continuous activity. There may be a suspension of activities which does not divide a single conspiracy into more than one. *United States v. Krasn,* 614 F.2d 1229, 1236 (9th Cir.1980). The period between the payments from Karlin and the payments from Guerra does not show a termination of the first conspiracy, but at most a suspension of conspiratorial activity. Furthermore, a conspiracy is presumed to continue until there is affirmative evidence of abandonment, withdrawal, disavowal, or defeat of the purposes of the conspiracy. *Id.* No such affirmative evidence was presented in this case.

Since a rational jury could have found that Bloch and Rivera participated in one overall agreement to demand and accept unlawful payments, we find that the evidence was sufficient to support the finding of a single conspiracy.

*Sufficiency of the Evidence for Conviction*

Appellants further contend that the evidence presented at trial does not support their convictions on the six substantive counts involving payments received from Guerra.

A violation of 29 U.S.C. § 186(b)(1) (1978), where payments are received in violation of section 186(a)(4), requires:

(1) a request, demand, or acceptance of payment from a person acting in the interest of an employer;

(2) the employment of the payee by a labor organization engaged in an industry affecting commerce;

(3) an intent on the part of the payor to influence the employee of a labor organization with respect to any of his actions, decisions or duties involving such labor organization; and

(4) a "willful" violation.

*Id.* § 186(a), (b) & (d).

██ It is undisputed that appellants, as employees of Local 47, AFM, were employed by a labor organization engaged in an industry affecting commerce, namely musical performances. The evidence also supported a finding that appellants demanded and accepted money from Guerra, who was acting in the interest of employers of Latin American musicians, and that Guerra intended to influence appellants with respect to their duties as employees of the union. A "willful" violation of 29 U.S.C. § 186 requires only that the defendant act with knowledge that the payments are from a person acting in the interest of an employer and are intended to influence the defendant's duties as a union employee; knowledge of the statutory prohibition itself is not necessary. *United States v. Carter*, 311 F.2d 934, 943 (6th Cir.1963).

██ Viewing this evidence in the light most favorable to the prosecution, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The evidence is therefore sufficient to uphold appellants' convictions.

*Evidence of Cash Deposits*

Appellants finally contend that the district court abused its discretion in admitting evidence of cash deposits made to appellants' bank accounts on the grounds that this evidence was irrelevant and prejudicial.

██ This court has held that evidence of sudden affluence is relevant to prove a crime for which pecuniary gain is the motive, and is admissible unless the probative value of the evidence is outweighed by its prejudicial effect. *Lyda v. United States*, 321 F.2d 788, 790 (9th Cir.1963). In the instant case, on cross-examination the government elicited testimony from appellants about substantial cash deposits to their bank accounts during the period of the alleged conspiracy. We find that the district court did not abuse its discretion in admitting this testimony about the cash deposits.

For the foregoing reasons, the district court judgment is AFFIRMED.