UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard Virgil BIBBERO, Jr.,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

James Paul MARSHALL,
Defendant-Appellant.

Nos. 83–5073, 83–5074.

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 5, 1983.

Decided Dec. 14, 1984.

Stephen W. Peterson, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Colleen Rohan, William Osterhoudt, San Francisco, Cal., for defendant-appellant.

Before FLETCHER and NELSON, Circuit Judges, and HARDY,* District Judge.

HARDY, District Judge:

Richard Virgil Bibbero, Jr. and James Paul Marshall were convicted in a jury trial of various drug smuggling charges. On appeal, they raise issues concerning proof of the alleged conspiracy, non-disclosure of relevant information held by the government, and admission of certain evidence.

We hold that defendants were entitled to disclosure of certain additional material held by the government and that hearsay testimony of a co-conspirator was erroneously admitted. For these reasons we reverse and remand.

## I. FACTS

The evidence, considered in the light most favorable to the government, proved the following sequence of events:

In 1972, Louis Villar, Edward Otero, Paul Acree, and Lance Weber agreed to work as partners for the purpose of smuggling and distributing marijuana. This partnership became known as the Coronado Company. In its early years, this partnership conducted smuggling operations on a relatively small scale. As the size of the loads increased, employees were hired to help with the off-loading part of the operation. In 1977, Bob Lahodny joined the Company, replacing Weber as a partner.

Late in 1979, the Company began to plan a fifth smuggling operation. Lahodny contacted a previous supplier, Lux Phaksuwana, and his associate, defendant Bibbero, about procuring a load of Thai marijuana. In a series of meetings at Santa Barbara and San Francisco, Bibbero met with the partners of the Company to discuss the operation. It was agreed that Bibbero would buy seven tons of marijuana and ready it for shipment to the United States. The Company would oversee the transporting of the load to Neah Bay, Washington, and land the shipment by helicopter for warehousing and distribution. The financial terms of this agreement were that Bibbero and the Company would each pay 50% of the cost of the supply, and Bibbero and the Company would receive 40% and 60% of the load respectively.

After a series of mishaps, the off-loading operation was abandoned with only one ton of the load safely landed and warehoused. Six tons of marijuana were recovered by

---

* Honorable Charles L. Hardy, U.S. District Judge for the District of Arizona, sitting by designation.

Drug Enforcement Administration (DEA) agents on the shores of Neah Bay. Bibbero successfully renegotiated the division of the salvaged marijuana and received 45% of the load.

During the spring and summer of 1981, Bibbero met Villar and other partners at Santa Barbara, Palo Alto, and LaCosta, California, to plan a sixth smuggling operation. Because of the debacle at Neah Bay, it was agreed that Bibbero would receive more than half of the load. Bibbero also succeeded in getting a friend, Joe Siegfried, onto the off-loading crew so that Bibbero could maintain closer contact with the off-loading operation. The landing was planned for Bear Harbor, California. Marshall was recruited to work as a crew member and arrived at the site several weeks early to help prepare for the off-loading operation.

When the boat transporting the marijuana had engine trouble near Japan, Bibbero loaned the Company $25,000 to cover the cost of repairs and was scheduled to receive 100% interest on this loan.

A six-ton load was successfully landed at Bear Harbor in October, 1981, and transported to a house at Arcata, California, where it was weighed and packaged. Marshall participated in the off-loading. Bibbero stayed at a hotel in Eureka during the operation. He later arrived at the Arcata house with Siegfried, congratulated the crew members, and departed. Sometime after the operation was completed, Lahodny hosted a victory party, which was attended by Bibbero and Marshall.

On August 3, 1982, a federal grand jury in the Southern District of California returned a three-count indictment against Bibbero, Marshall, and twenty-five other individuals pertaining to the drug smuggling operation. Count one charged Bibbero, Marshall, and twenty-five others with conspiracy to possess marijuana, exceeding 1000 pounds, with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(6), and 846 (1982). Count two charged the same individuals with conspiracy to import marijuana with intent to distribute in viola-

tion of 21 U.S.C. §§ 952, 960, and 963. Count three charged Bibbero and twelve others, not including Marshall, with possession of 3000 pounds of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

The district court divided the twenty-seven defendants into three groups and ordered three separate trials. The defendants were tried as a separate group, and judgments were entered after the jury found Bibbero and Marshall guilty as per the indictment. The defendants filed a timely appeal from the district court's judgment order.

## II. THE ADMISSION OF CO–CONSPIRATOR VAUGHAN'S OUT–OF–COURT STATEMENT

On direct examination, government witness Allen Logie testified that he participated in the sixth smuggling operation as the off-loading equipment manager. He specifically testified that when he arrived at the Arcata house where the marijuana was being weighed and packaged, he saw Bibbero and Siegfried. Logie left the house to drive some equipment to a storage site in Novato, California, and when he returned Siegfried was loading the boxes of marijuana into his truck but Bibbero was gone. Over the objection of Bibbero's counsel, Logie testified that Vaughan then told him that the marijuana that Siegfried was loading "belonged to little Rick [Bibbero]." This statement was admitted on the basis that it was made "by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). The trial court concluded that the statement may have been made to further the distribution of marijuana.

 Bibbero contends that Vaughan's statement was inadmissible because it did not further the conspiracy. We agree with the defendant. To come within the co-conspirator exception, the evidence must indicate that the statement furthered the common objectives of the conspiracy; "mere conversation between conspirators" is not

**584**

admissible. *United States v. Fielding*, 645 F.2d 719, 726 (9th Cir.1981); *United States v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979). On voir dire conducted by defense counsel, Logie virtually acknowledged that Vaughan's statement was idle conversation.[1] Because of Logie's limited responsibilities as equipment manager, Vaughan's statement of ownership was immaterial to him. Logie confirmed that the information did not affect his conduct afterward. The government stresses that Logie also testified that while the marijuana was being weighed and repackaged Vaughan was entering box numbers onto an accounting ledger. This fact, while relevant to our inquiry, does not change our conclusion. The fact that Vaughan was laboring on behalf of the conspiracy when he spoke to Logie does not require the conclusion that his statement furthered the conspiracy. Rather, the evidence clearly indicates that Vaughan was merely informing Logie of the marijuana's ownership without any intent to further the conspiracy.

Having determined that Logie's testimony should not have been admitted, we must now consider whether this error requires reversal of the verdict against Bibbero. This court has held that "if the hearsay does not fall into an exception it is conclusively unreliable" for the purposes of the Confrontation Clause of the sixth amendment. *See United States v. McKinney*, 707 F.2d 381, 384 (9th Cir.1983) (footnote omitted). We are considering, therefore, the magnitude of a constitutional error and, accordingly, the verdict must be reversed unless the error was harmless beyond a reasonable doubt. *Id.* at 384–85; *United States v. Hollingshead*, 672 F.2d 751, 755 (9th Cir.1982).

■ The evidence of Bibbero's guilt was formidable but not overwhelming, and Vaughan's statement that Bibbero owned a share of the marijuana was important to the government's case. Bibbero took the stand and presented the defense that he did not participate in the conspiracy. He confirmed the testimony of Villar and Logie that he was present when the conspirators carried out the sixth smuggling operation, but he insisted that he gained the opportunity to witness the operation after learning that his friends were smugglers and did so only as a curious bystander. In view of this defense, evidence of Bibbero's actual participation was important. As the principal witness, Villar testified to Bibbero's involvement in various phases of the conspiracy. The government sought to corroborate Villar's testimony about Bibbero's actual participation with only two pieces of evidence: another government witness's identification of Bibbero in Thailand and Vaughan's statement that Bibbero owned a

---

1. Evidence of the conversational nature of Vaughan's declaration is provided by Logie's answers to the following series of questions:

Q [D]id any of the things that Mr. Vaughan told you about ownership of the load, at all alter, change, or modify, any of your conduct in reference to the work you did on this particular load?

A Not that I—no.

Q In other words, to you, it was immaterial who owned what was eventually sold of this load. Correct? As far as your job was concerned?

A That's right.

. . . .

Q So who owned the load, who had an interest in the load, who had invested in the load, was irrelevant to any of those conversations as far as you were concerned, correct?

A Yes.

RT: 366–68

Logie further testified that there was a rule that a member of the Company should not commu-

nicate information to another member unless it was necessary to further the conspiracy. He then acknowledged that Vaughan's statement was a violation of this rule:

Q And there was a rule in the organization that people weren't told things that were not absolutely necessary for their functioning in the organization. Correct?

A That's correct.

Q And so what they called the need-to-know basis?

A Yes.

. . . .

Q So would you say that it was out of the ordinary, then, it was a break with tradition that the rule of the company for David Vaughan to have made the kind of statements he made to you about who was involved in the organization, such as Mr. Bibbero?

A Yes, it was.

RT: 484–86

share of the marijuana. The identification was unsuccessful. Thus, the only corroborating evidence of Bibbero's participation was Vaughan's statement. In view of the importance of this statement to the government's case, it cannot be concluded beyond a reasonable doubt that the error of admitting this evidence did not affect the verdict. Therefore, the verdict against Bibbero must be reversed.

### III. DISCOVERY OF JENCKS ACT MATERIAL

■ The Jencks Act provides that

[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. § 3500(b). Discovery of the witness' statement may not be compelled until the witness has testified. *United States v. Spagnuolo*, 515 F.2d 818, 821 (9th Cir. 1975). When the statement must be produced, the government may request the court to inspect the statement in camera and excise any irrelevant material. 18 U.S.C. § 3500(c).

Before trial the government produced for the defendants a copy of a DEA report based upon interviews with government witness Villar. This original version was severely censored with approval of the trial court to protect an on-going investigation by the DEA. Early in the trial and before Villar testified, the government produced a second version of the report containing fewer but still many excisions. Defense counsel strenuously objected to this form

of discovery, contending that it violated the Jencks Act. After Villar testified, defense counsel renewed their objection. The trial court directed the government to produce a third version revealing all information relevant to Villar's testimony. The government apparently intended at this point to release the report substantially unexcised; however, a third version was never received by defense counsel.[2]

■ On appeal the defendants contend that the government violated the Jencks Act by producing only the second version of the DEA report. We agree. There are no exceptions to the Jencks rule that all statements relevant to the subject matter of the witness' testimony must be produced after direct examination of the witness. *See Ogden v. United States*, 303 F.2d 724, 739–40 (9th Cir.1962) *cert. denied* 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964). The statement need relate only generally to the events and activities testified to by the witness to come within its sweep. *Id.* A review of Villar's testimony and comparison of the second version with the original report indicates that substantial, deleted portions of the original are generally relevant to Villar's testimony. It is not for the courts to speculate whether the omitted portions could have been used effectively at trial. *Goldberg v. United States*, 425 U.S. 94, 111 n. 21, 96 S.Ct. 1338, 1348 n. 21, 47 L.Ed.2d 603 (1976). We conclude that the substantive rights of both defendants have been violated and, accordingly, reverse their convictions.

### IV. SUFFICIENCY OF THE EVIDENCE

Even though we reverse on procedural grounds, double jeopardy principles require us to consider another contention.

---

**2.** On October 13, 1983, after briefs had been filed in this appeal, the government moved to augment the record on appeal to include a "third expurgated version." Defendants opposed the motion, arguing that they had not received the third version during trial. After oral argument, we withdrew the case from submission and remanded it to the district court for the limited purpose of determining whether the government had delivered the third version to defendants during trial. The district court held

that there was insufficient evidence to support a finding that defendants had received the third version. The court based its ruling on an affidavit submitted by the prosecutor admitting that he had been mistaken in urging that a copy of the third version had been provided to the defendants. The government then moved to withdraw its motion to augment the record on appeal. On January 23, 1984, we denied the motion to withdraw and granted the motion to augment the record on appeal.

Bibbero contends that there was a prejudicial variance between the single overall conspiracy charged in the indictment and the proof, which in his view established multiple conspiracies rather than just one overall conspiracy. The question of whether a single conspiracy has been proved, rather than multiple conspiracies, is a recurring one, which is essentially a question of the sufficiency of the evidence. *See, e.g., United States v. Arbelaez,* 719 F.2d 1453, 1457 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984); *United States v. Bloch,* 696 F.2d 1213, 1215 (9th Cir.1982); *United States v. Abushi,* 682 F.2d 1289, 1293 (9th Cir.1982); *United States v. Kaiser,* 660 F.2d 724, 730 (9th Cir.1981), *cert. denied,* 455 U.S. 956, 102 S.Ct. 1467, 71 L.Ed.2d 674, 457 U.S. 1121, 102 S.Ct. 2935, 73 L.Ed.2d 1334 (1982), *overruled on other grounds, United States v. DeBright,* 730 F.2d 1255 (9th Cir.1984) (en banc); *United States v. Kenny,* 645 F.2d 1323, 1335 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425, 454 U.S. 828, 102 S.Ct. 121, 70 L.Ed.2d 104 (1981).

■ An appellate reversal of a conviction on the basis of insufficiency of the evidence has the same effect as a judgment of acquittal: the Double Jeopardy Clause precludes retrial. *See Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982); *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). The existence of other grounds for reversal does not avoid the necessity of reviewing the sufficiency of the evidence.

As noted by Justice Brennan in his concurrence in *Justices of Boston Municipal Court v. Lydon:*

[W]hen a defendant challenging his conviction on appeal contends both that the trial was infected by error and that the evidence was constitutionally insufficient, the court may not, consistent with *Burks v. United States,* [437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)], ignore the sufficiency claim, reverse on grounds of trial error, and remand for retrial. Because the first trial has plainly ended, "retrial is foreclosed by the Double Jeopardy Clause if the evidence fails to satisfy the [constitutional standard for sufficiency]. Hence, the [sufficiency] issue cannot be avoided; if retrial is to be had, the evidence must be found to be legally sufficient, as a matter of federal law, to sustain the jury verdict."

—— U.S. ——, 104 S.Ct. 1805, 1820–21, 80 L.Ed.2d 311 (1984) (Brennan, J., concurring) (quoting *Tibbs v. Florida,* 457 U.S. 31, 51, 102 S.Ct. 2211, 2223, 72 L.Ed.2d 652 (1982) (White, J., Dissenting)).

The necessity of reviewing a sufficiency of the evidence claim where trial error required reversal has been recognized in this circuit. *See, e.g., United States v. Perez-Reveles,* 715 F.2d 1348, 1355 (9th Cir.1982); *Kaiser,* 660 F.2d at 730.[3]

In determining the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the

---

**3.** We note that *United States v. Harmon,* 632 F.2d 812 (9th Cir.1980) (per curiam), is not inconsistent with our conclusion that we must address a sufficiency claim when we reverse for evidentiary error.

*Harmon* addressed the question of whether retrial would be barred if the evidence as submitted was sufficient but would have been insufficient had the improperly admitted evidence been excluded, a question left open by the Supreme Court in *Greene v. Massey,* 437 U.S. 19, 26 & n. 9, 98 S.Ct. 2151, 2155 & n. 9, 57 L.Ed.2d 15 (1978). We concluded in *Harmon* that an appellate court faced with a sufficiency claim should not be limited to a consideration of only properly admitted evidence. 632 F.2d at 814.

In *Harmon,* we stated that "the Double Jeopardy Clause does not bar retrial when reversal is based on the improper admission of evidence." *Id.* We do not read this to preclude consideration of the defendant's accompanying sufficiency claim, but rather to require that all evidence adduced at trial be considered in making a sufficiency determination. If all the evidence the government produced at a defendant's first trial, including that which should not have been admitted, is insufficient to support the conviction, then the government has had its proverbial "one bite at the apple" and any retrial would be forbidden.

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

We first determine whether there was a single overall conspiracy.

A conspiracy is "an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense." *United States v. Friedman*, 593 F.2d 109, 115 (9th Cir.1979). To establish the existence of a single conspiracy, rather than multiple conspiracies, the government must prove that an overall agreement existed among the conspirators. *Bloch*, 696 F.2d at 1215; *Kenny*, 645 F.2d at 1334–35; *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir.), *cert. denied*, 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). The evidence must show that each of the defendants was involved. *United States v. Clevenger*, 733 F.2d 1356, 1358 (9th Cir.1984); *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir.1979). A formal agreement is not necessary; rather the agreement may be inferred from the defendants' acts pursuant to the scheme, or other circumstantial evidence. *Clevenger*, 733 F.2d at 1358; *United States v. Thomas*, 586 F.2d 123, 132 (9th Cir.1978). A single conspiracy may involve several subagreements or subgroups of conspirators. *United States v. Tille*, 729 F.2d 615, 621 (9th Cir.1984).

In this circuit, we have applied a "factors" analysis to distinguish single from multiple conspiracies. *See Tille*, 729 F.2d at 621; *United States v. Zemek*, 634 F.2d 1159, 1168 (9th Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341, 450 U.S. 985, 101 S.Ct. 1525, 67 L.Ed.2d 821, 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981). The relevant factors include the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals. *Tille*, 729 F.2d at 621.

The evidence established that members of the Coronado Company conspired to import and distribute marijuana from April, 1977, to August, 1981, as alleged in the indictment. Although others were involved in the operation of the Company, the key participants—Villar, Otero, Weber and later Lahodny—remained relatively constant. Likewise, the method of operation throughout remained relatively constant. The contraband was brought by ship to pre-arranged points offshore and was loaded onto small boats for transport to shore. Shipments arrived from time to time during the period charged in the indictment at widely separated locations (California, Maine and Washington), but the evidence was such that a jury could conclude that there was a continuous far flung operation. The consistency of key personnel and of method and type of operation militates against the separation of these smuggling operation into smaller, independent conspiracies. *United States v. Hinton*, 543 F.2d 1002, 1014 (2d Cir.1976), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976), 429 U.S. 1051, 97 S.Ct. 764, 50 L.Ed.2d 767, 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 783, 430 U.S. 982, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977); *cf. Bloch*, 696 F.2d at 1215 (single conspiracy established by same scheme, same central actors, same activities and same goals).

Given that the Coronado Company engaged in the continuing conspiracy alleged in the indictment, the analysis then focuses on whether Bibbero was a member of the conspiracy. "Once the existence of a conspiracy is established, 'evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the *connection is slight*, is sufficient to convict him with knowing participation in the conspiracy.'" *Abushi*, 682 F.2d at 1293 (quoting *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir.1977) (emphasis in original)). Specifically, our inquiry is whether the evidence proved that Bibbero's understanding with the Company was of sufficient scope to warrant the conclusion that he embraced the common purpose of the overall conspiracy. *See Thom-*

*as,* 586 F.2d at 132. In this determination, the courts rely upon knowledge of and dependency on the enterprise as indicative of that understanding. *United States v. Taylor,* 562 F.2d 1345, 1352 (2d Cir.), *cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083, 434 U.S. 853, 98 S.Ct. 170, 54 L.Ed.2d 124 (1977); *see also Kenny,* 645 F.2d at 1335; *Thomas,* 586 F.2d at 132; *Kearney,* 560 F.2d at 1362; *United States v. Baxter,* 492 F.2d 150, 158 (9th Cir.), *appeal dismissed,* 414 U.S. 801, 94 S.Ct. 16, 38 L.Ed.2d 38 (1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). In turn, such knowledge and dependency are inferred from specific evidence of the "nature of the criminal enterprise and the defendant's role in it." *Taylor,* 562 F.2d at 1352.

■ We believe that the jury reasonably could have found that Bibbero was a member of the overall conspiracy. While there is no evidence that Bibbero had any connection with the Company during four earlier shipments alleged in the indictment, the law is well established that "[o]ne may join a conspiracy already formed and in existence, and be bound by all that has gone before in the conspiracy, even if unknown to him." *United States v. Knight,* 416 F.2d 1181, 1184 (9th Cir.1969); *see also United States v. Jackson,* 627 F.2d 1198, 1212 n. 30 (D.C.Cir.1980). The evidence did establish that Bibbero helped to plan the fifth and sixth smuggling operations and acted as a supplier and distributor of the marijuana. Bibbero's responsibilities placed him at the core of the conspiracy during these two operations. From his position of responsibility, Bibbero undoubtedly understood the full scope of the conspiracy while he was a participant and must have realized that his own profits from the enterprise were dependent upon the success of each off-loading operation.

We conclude that there was sufficient evidence to enable a reasonable jury to find beyond a reasonable doubt that there was a single overall conspiracy and that Bibbero was a member of that conspiracy.

REVERSED AND REMANDED.