967 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel Enyinnaya OGIDI, Defendant-Appellant.
 No. 91-30243.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 5, 1992.*
Decided June 9, 1992.
 
 Before EUGENE A. WRIGHT, CANBY and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ogidi appeals his convictions for importation of heroin, conspiracy to import heroin, smuggling, possession with intent to distribute and making a false statement. We affirm.
 
 
 3
 * In October 1990, Ogidi and Dianne Jones arrived at the Seattle-Tacoma International Airport on a flight from Singapore. After they left the plane, both were questioned separately about the trip. During the customs inspection, Ogidi was asked whether he was traveling alone. He answered affirmatively and said he met Jones on the flight. The Customs official found pictures of Ogidi and Jones together in Ogidi's luggage
 
 
 4
 Another Customs official questioned Jones. She denied traveling with Ogidi even though her purse contained documents bearing his name. The official then discovered over 9,000 grams of heroin in Jones' suitcase liner. Jones and Ogidi were arrested.
 
 
 5
 Jones pleaded guilty and testified against Ogidi at trial. A jury convicted him on all five charges. He appeals.
 
 II
 
 6
 Ogidi asserts that the evidence presented at trial established two separate conspiracies, prejudicing his substantive rights. See Kotteakos v. United States, 328 U.S. 750, 776-77 (1946). He contends that the incidents involving Nwabuko's importation of heroin into New Jersey constitute a conspiracy independent of this crime.
 
 
 7
 To establish the existence of a single conspiracy, rather than multiple conspiracies, the government must prove that an overall agreement existed among the conspirators. United States v. Zemek, 634 F.2d 1159, 1167 (9th Cir.1980), cert. denied sub nom., Carbone v. United States, 450 U.S. 916 (1981). A formal agreement is not necessary; rather one may be inferred from the defendants' acts pursuant to the scheme, or from other circumstantial evidence. United States v. Bibbero, 749 F.2d 581, 587 (9th Cir.1984), cert. denied, 471 U.S. 1103 (1985). A single conspiracy may involve several subagreements or subgroups of conspirators. United States v. Lujan, 936 F.2d 406, 411 (9th Cir.1991).
 
 
 8
 To distinguish single from multiple conspiracies, this court applies a factors analysis. Bibbero, 749 F.2d at 587. The relevant factors include the nature of the scheme; the identity of the participants; the quality, frequency and duration of each coconspirator's transactions; and the commonality of times and goals. Id.
 
 
 9
 The evidence established that Ogidi and Nwabuko were members of a single conspiracy to import and distribute heroin. They knew each other before traveling to Singapore. Both were Nigerians and members of the Ibo tribe. Once in Singapore they stayed at the same hotel and were in contact with each other.
 
 
 10
 Likewise the method of operation remained relatively constant. Both travelled with women who were United States citizens and who had recently applied for passports. These women brought the heroin into this country in identical Miracle brand suitcases. The heroin was packaged in the same manner and was secreted in the same parts in the suitcases. At inspection, both men attempted to disassociate themselves from the women.
 
 
 11
 These facts provided the jury with sufficient evidence to determine that the Seattle seizure and the Newark seizure were separate acts of the same conspiracy.
 
 III
 
 12
 Ogidi argues that the evidence was insufficient to prove that he participated in the conspiracy charged in the indictment. He argues that he knew nothing about the heroin in Jones' suitcase.
 
 
 13
 After the government proves that a conspiracy exists, evidence of only a slight connection to it is sufficient to convict. United States v. Taylor, 802 F.2d 1108, 1116 (9th Cir.1986), cert. denied, 479 U.S. 1094 (1987). The evidence must show that Ogidi's understanding with his brother and others was of sufficient scope to warrant the conclusion that he embraced the common purpose of the overall conspiracy. United States v. Abushi, 682 F.2d 1289, 1293 (9th Cir.1982). To make this determination, courts rely on knowledge of and dependency on the enterprise to demonstrate that understanding. Knowledge and dependency can be inferred from specific evidence of the nature of the criminal enterprise and the defendant's role in it. Id.
 
 
 14
 The evidence shows that Ogidi was an active member of the conspiracy to import heroin. He transported the $200,000 from the United States to Singapore without declaring it. His brother, Michael Ogidi, is a coconspirator. He too is a Nigerian, and a member of the same tribe as many other conspirators. Ogidi lied on several occasions about his relationship to Jones, the heroin courier, when the Customs officials confronted him. He understood the full scope of the conspiracy while he was a participant and doubtless realized that his own profits from the enterprise were dependent on the success of each smuggling operation.
 
 
 15
 Viewing the evidence most favorably to the government, we find that the jury could rationally have concluded beyond a reasonable doubt that Ogidi was a member of the conspiracy.
 
 IV
 
 16
 Ogidi asserts that his admittedly false statement to the Customs officials meets the requirements for the "exculpatory no" exception to a violation of 18 U.S.C. § 1001. That statute says:
 
 
 17
 Whoever, in any matter within the jurisdiction of any department or agency of the United States ... makes any false, fictitious, or fraudulent statements or representations ... shall be fined ... or imprisoned ... or both.
 
 
 18
 The exculpatory no exception provides an exception to liability under 18 U.S.C. § 1001. United States v. Manasen, 909 F.2d 1357, 1359 (9th Cir.1990). It applies if five factors are present:
 
 
 19
 1. the false statement must be unrelated to a privilege or a claim against the government;
 
 
 20
 2. the declarant must be responding to inquiries initiated by a federal agency or department;
 
 
 21
 3. the false statement must not impair the basic functions entrusted by law to the agency;
 
 
 22
 4. the government's inquiries must not constitute a routine exercise of administrative responsibility; and
 
 
 23
 5. a truthful answer would have incriminated the declarant.
 
 
 24
 Id. If the declarant does not satisfy any one of the five requirements, the exception does not apply. Id.
 
 
 25
 Ogidi fails to meet the first requirement because his false statement was related to claiming the privilege of entering the United States. See United States v. Carrier, 654 F.2d 559, 561 (9th Cir.1981). The official's question concerning whether Ogidi was travelling alone was routine and not asked in the context of an investigation. The district court properly denied the motion to dismiss.
 
 V
 
 26
 Ogidi argues that the court abused its discretion when it admitted rebuttal evidence concerning the seizure of approximately $50,000 from his brother's apartment.
 
 
 27
 Fed.R.Evid. 608(b) precludes the use of extrinsic evidence to impeach a witness's general credibility. This court has concluded, however, that "[i]ndividual rules of evidence, in this instance Rule 608(b) should not be read in isolation, when to do so destroys the purpose of ascertaining the truth. This is especially so when a witness directly contradicts the relevant evidence Rule 608(b) seeks to exclude." United States v. Batts, 558 F.2d 513, 517 (9th Cir.1977), opinion withdrawn and aff'd on other grounds, 573 F.2d 599, cert. denied, 439 U.S. 859 (1978); see also Walder v. United States, 347 U.S. 62, 65 (1947) ("there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the government's disability to challenge his credibility."); 3 J. Weinstein & M. Berger, Weinstein's Evidence p 608 (1988).
 
 
 28
 On direct examination, Ogidi testified that the man behind the heroin importation was Chukwa. He admitted that Chukwa lived with Ogidi's brother, Michael. He asserted that they arranged the Singapore trip without his assistance or knowledge. On cross-examination, Ogidi testified further that although he and Michael lived in the same city, he had little knowledge about Michael's life or finances.
 
 
 29
 The government's extrinsic evidence was introduced to disprove Ogidi's testimony that he did not know of his brother's involvement with drugs. The court allowed the government to cross-examine him about an incident in March 1990 when a Customs official seized $50,000 from Michael's apartment. During the seizure, Ogidi entered the apartment and knew of the whole matter.
 
 
 30
 After Ogidi testified and began to shift blame to Michael and Chukwa, his contact and knowledge of their backgrounds became relevant. The admission that he knew his brother was involved in drug dealing was probative of his knowledge of the true purpose for the trip to Singapore. Although this evidence damaged Ogidi's credibility, it also contradicted his testimony about his knowledge of Michael's lifestyle. The court properly admitted this rebuttal evidence.
 
 VI
 
 31
 Ogidi contends that the court improperly admitted in evidence his attempt to hire an attorney for Jones. He says this was irrelevant and prejudicial. The government responds that the evidence was relevant to show Ogidi's knowledge of the heroin. It points out that if it were true that Jones had duped him, he would not have tried to retain an attorney for her.
 
 
 32
 In a different context, the evidence might be highly prejudicial, despite its relevance, but in this case, in which the other evidence regarding his knowing participation in the conspiracy was strong, it was not unfairly prejudicial. The court did not abuse its discretion in admitting this evidence.
 
 
 33
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3