**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

  v.

GARY L. ERMOIAN,
  *Defendant-Appellant*.

No. 11-10124

D.C. No.
1:08-cr-00224-
OWW-11

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

  v.

STEPHEN JOHN JOHNSON,
  *Defendant-Appellant*.

No. 11-10388

D.C. No.
1:08-cr-00224-
OWW-12

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, Senior District Judge, Presiding

Argued and Submitted
April 18, 2013—San Francisco, California

Filed August 14, 2013
Amended August 28, 2013

Before: Alfred T. Goodwin, Diarmuid F. O'Scannlain,
and N. Randy Smith, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Criminal Law

The panel amended an opinion filed August 14, 2013, in a case in which the panel held that a criminal investigation is not an "official proceeding" under the federal statute criminalizing obstruction of justice, 18 U.S.C. § 1512.

In the amended opinion, the panel reversed and remanded to the district court so that it may enter a judgment of acquittal on the obstruction of justice charges and resentence defendant Johnson.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

John Balazs, Sacramento, CA, argued the cause and filed a brief for defendant-appellant Gary L. Ermoian.

Jerald Brainin, Los Angeles, CA, argued the cause and filed a brief for defendant-appellant Stephen J. Johnson.

Mark E. Cullers and Laurel J. Montoya, Assistant United States Attorneys, Fresno, CA, argued the cause and filed a brief for plaintiff-appellee United States of America. With them on the brief were Benjamin J. Wagner, United States Attorney, Fresno, CA, and Camil A. Skipper, Appellate Chief, Fresno, CA.

---

**ORDER**

The opinion filed in this case on August 14, 2013 is amended as follows:

In the final sentence on page seventeen of the slip opinion, add "and resentence Johnson" after the word "charges" and before the period.

An amended opinion is filed concurrently with this order.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether an FBI investigation qualifies as an "official proceeding" under a federal statute criminalizing obstruction of justice.

I

A

The facts of this case read like an episode of the fictional television drama *Sons of Anarchy*.[1] Sometime in 2006, the Central Valley Gang Impact Task Force ("CVGIT")—a United States Department of Justice ("DOJ")-funded group tasked with coordinating local law enforcement efforts to eliminate gang-related crimes in California's Central Valley—learned that the Hells Angels motorcycle gang was attempting to establish a chapter in Modesto, California.[2] Hoping to disrupt the formation of this gang chapter, the CVGIT opened an investigation into several known associates of the Hells Angels gang in the Modesto area,

---

[1] *Sons of Anarchy* is a television drama series that runs on the cable channel FX. It documents the legal and illegal activities of a fictional outlaw motorcycle club operating in a town in California's Central Valley. In the show, the club's headquarters are located in a clubhouse adjacent to an auto mechanic shop.

[2] The Federal Bureau of Investigation ("FBI") was also a member-agency of the CVGIT. Because FBI Agent Nathan Elias was the lead member of the CVGIT task force investigating the Holloways, we—like the parties—will refer to the CVGIT's investigation as an FBI investigation.

including Robert Holloway and his son Brent Holloway,[3] the Road Dog Cycle Shop (which they co-owned), and members of the Merced Chapter of the Hells Angels gang who were affiliated with Road Dog Cycle.

Through information gleaned from earlier investigations, the CVGIT was aware that Road Dog Cycle was dealing in stolen motorcycles and motorcycle parts. The task force also suspected that some individuals associated with law enforcement were leaking information to the Holloways and were thus facilitating their criminal enterprise.

To catch the Holloways engaging in illegal activity, the CVGIT first sought to prevent any further leaks of confidential law enforcement information. Thus, in an effort to ferret out some of Robert's law enforcement sources, the CVGIT created a "Gang Intelligence Bulletin," which it distributed to local law enforcement in September 2007. The bulletin purported to contain "confidential information" that was "intended for law enforcement personnel only." But in actuality, the information in the bulletin was "watered down" to avoid leaks of sensitive information that could truly jeopardize the CVGIT's investigation into the Holloways and Road Dog Cycle. In substance, the bulletin described surveillance of the annual summer "Burn-Out Party" held at Road Dog Cycle and named the different outlaw motorcycle gangs seen in attendance. After circulating the bulletin, the CVGIT monitored wiretaps it had placed on Robert's phones, hoping to ensnare the law enforcement officers leaking information.

---

[3] To avoid confusion, we refer to Robert and Brent Holloway by their first names.

The defendants in this case, Gary L. Ermoian and Stephen J. Johnson, were charged with obstructing justice based upon their activities during a chain of events set into motion by the bulletin's distribution.    The morning after the Gang Intelligence Bulletin was distributed to law enforcement personnel, David A. Swanson[4]—a Deputy Sheriff and bailiff in the county courthouse—placed a 40.8 second phone call from his work telephone to Ermoian.    At the time, Ermoian—one of Robert's close personal friends—was employed as a part-time private investigator for Robert's attorney, Kirk McAllister.  Swanson informed Ermoian that he "saw some photos" of the Burn-Out Party and that Ermoian should warn Robert to "watch his back."

The wiretap on Robert's phone recorded a flurry of activity immediately after Swanson contacted Ermoian.  Just minutes after receiving the call from Swanson, Ermoian called Robert to share Swanson's tip.  Given Swanson's position in the courthouse and his access to information about pending warrant applications, Ermoian was concerned that Swanson's veiled warning that Robert should "watch his back" might indicate that police were coming with a search warrant.  He thus advised Robert to "take a look around the shop [to] see if you see anything . . . ."  Heeding Ermoian's advice, Robert talked to Brent and other Road Dog Cycle employees, checked the store for "questionable" motorcycle parts, and put one questionable item "in the alley [behind the store] with a tag on it."

---

[4] Although Swanson was charged with obstruction of justice and was tried along with defendants Ermoian and Johnson, he was acquitted of the charge.  Thus, he is not a party to this appeal.

Later that same day, Ermoian and Robert both received several additional phone calls warning about a pending investigation into Road Dog Cycle from defendant Johnson. Johnson was not a member or close affiliate of the Hells Angels motorcycle gang, but he had become acquainted with Robert, Ermoian, and McAllister through a business he owned and operated, which subcontracted with law enforcement to perform canine sniff searches. Starting sometime in 2006, Robert and his attorney McAllister had hired Johnson on a few occasions to perform preventative canine searches of Road Dog Cycle so that they could locate and dispose of any drugs or other contraband found on the premises. Shortly after Ermoian received Swanson's tip, McAllister requested that Johnson perform a preventative search of Road Dog Cycle in anticipation of the pending law enforcement raid. Upon learning that another source suspected a raid, Johnson informed both Ermoian and Robert that he had "overheard" a conversation at the DOJ facility where he was contracted to conduct periodic canine searches about an impending Bureau of Alcohol, Tobacco, and Firearms ("ATF")-DOJ investigation into Road Dog Cycle.

With two sources suggesting that a police raid was imminent, Robert, Ermoian, Johnson, and other affiliates of Road Dog Cycle flew into action. Based on the wiretap, the CVGIT learned that they conducted counter-surveillance, searching for undercover officers near the shop. They warned the local chapter of Hells Angels to "make sure that [the] crew is safe" because they were in "jeopardy" from law enforcement crackdowns. They attempted to ferret out informants within the motorcycle gang. And they generally tried to "make sure that all [their] ducks [we]re in a row" and made an effort to be "careful about what c[ame] in and out" of the shop.

Having discovered that Ermoian and Johnson were related to the law enforcement information leaks, the CVGIT did not move immediately to arrest them. Instead, to avoid tipping off the other suspects to the true scope of the investigation, it postponed action and continued to dig into the illegal activities of Robert and Road Dog Cycle, as they were the primary targets of the investigation. It wasn't until June 2008, when the CVGIT's investigation into the Holloways was coming to a close, that FBI Agent Nathan Elias—the lead member of the CVGIT for the Holloway case—first went to interview Ermoian about the Holloway investigation. Johnson was first interviewed about his involvement with Holloway a month later. Subsequently, both Ermoian and Johnson were arrested on charges of conspiracy to obstruct justice.

B

On May 28, 2009, a federal grand jury returned an indictment against twelve defendants associated with Road Dog Cycle, charging several violations of racketeering laws and various related offenses. In the indictment, defendants Ermoian and Johnson were charged with conspiracy to "corruptly obstruct, influence, and impede an official proceeding, to wit, a law enforcement investigation conducted by the Federal Bureau of Investigation" in violation of 18 U.S.C. § 1512(c)(2), (k). Defendants Ermoian and Johnson, and the charges against them, were severed from the other defendants and charges in the indictment. The remaining defendants pleaded guilty to various charges, and only Ermoian and Johnson proceeded to trial.

Throughout the trial process, Ermoian and Johnson challenged the legal validity of the obstruction of justice

charge.   Specifically, and relevant to this appeal, the defendants filed a pre-trial motion to dismiss the indictment, an objection to the jury instructions and a motion for acquittal during trial, as well as a post-trial motion for acquittal, at all times asserting the same general argument: they could not be convicted under the obstruction of justice statute, § 1512, because their alleged obstruction of an FBI investigation did not qualify as obstruction of an "official proceeding" under the statute.   The district court rejected this argument each time, concluding that the term "official proceeding" as used in the statute should be read broadly to include an "FBI investigation."

The jury convicted Ermoian and Johnson of obstructing justice.  They timely appealed.

II

Ermoian and Johnson raise various arguments challenging their conviction on appeal, but they focus primarily on one issue: Did the district court err when it determined that an FBI investigation qualifies as an "official proceeding" under the statute criminalizing obstruction of justice?

Our circuit has never before addressed the meaning of the term "official proceeding" as used in the obstruction of justice statute at 18 U.S.C. § 1512.  But the dearth of Ninth Circuit case law on the question does not leave us without a point of reference.  We begin, as any effort to interpret a statute must, with the text.  The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  Whether the meaning of a statute is plain "is

determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. If the statute's meaning can be resolved by reference to the statutory text such that "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" our inquiry is complete. *Id.* at 340 (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989)).

## A

The statute under which the defendants were convicted, 18 U.S.C. § 1512(c)(2), prohibits "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] *any official proceeding*, or attempt[ing] to do so." *Id.* (emphasis added). Section 1515(a)(1) defines an official proceeding as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory

official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1). Of these definitions, the parties agree that only one might cover an FBI investigation—"a proceeding before a Federal Government agency which is authorized by law." *Id.* § 1515(a)(1)(C).

1

As used in the statute, the definition of the phrase "official proceeding" depends heavily on the meaning of the word "proceeding." That word is used—somewhat circularly—in each of the definitions for an "official proceeding" and is key to the phrase's meaning. *See id.*

"Proceeding" has been defined in various ways, ranging from the broad to the specific. But an account of both lay and legal dictionaries suggests that definitions of the term fall into one of two categories: "proceeding" may be used either in a general sense to mean "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior" or more specifically as a legal term to mean "[a] legal action or process; any act done by authority of a court of law; a step taken by either party in a legal case." *Proceeding*, Oxford English Dictionary, *available at* http://www.oed.com; *see also* Black's Law Dictionary 1241 (8th ed. 2004) (defining proceeding either narrowly as (1) "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment;" (2) "[a]ny procedural means for seeking redress

from a tribunal or agency;" and (3) "[t]he business conducted by a court or other official body; a hearing" or more broadly as "an act or step that is part of a larger action."). As such, one of the word's definitions ("an action or series of actions") is broad enough to include a criminal investigation, as it encompasses a wide range of activities. *See Proceeding*, Oxford English Dictionary, *available at* http://www.oed.com. But the other ("any act done by authority of a court of law; a step taken by either party in a legal case") would exclude criminal investigations in the field, as it associates the term with formal appearances before a tribunal. *See id.*

Dictionary definitions of the term "proceeding" alone, therefore, cannot conclusively resolve whether an FBI investigation qualifies as an official proceeding under § 1512. But dictionary definitions in isolation do not end our inquiry. When a term has both a general and a more technical meaning, we must look to surrounding words and phrases to decide which of the two meanings is being used. As it was once aptly explained: "Sometimes context indicates that a technical meaning applies. . . . And when law is the subject, ordinary legal meaning is to be expected, which often differs from common meaning." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 73 (2012).

Several aspects of the definition for "official proceeding" suggest that the legal—rather than the lay—understanding of term "proceeding" is implicated in the statute. For one, the descriptor "official" indicates a sense of formality normally associated with legal proceedings, but not necessarily with a mere "action or series of actions." *See* 18 U.S.C. § 1515; *see also Proceeding*, Oxford English Dictionary, *available at* http://www.oed.com. Moreover, when used to define "official proceeding," the word "proceeding" is surrounded

with other words that contemplate a legal usage of the term, including "judge or court," "Federal grand jury," "Congress," and "Federal Government agency."  And most importantly, the definition of "official proceeding" at issue here clarifies that the type of "proceeding" being described "is authorized *by law*."  18 U.S.C. § 1515(a)(1)(C) (emphasis added).

Thus, clues in the text surrounding "proceeding"—although perhaps not conclusive—point us in a general direction.  And the overall tenor of the definitions associated with the legal usage of "proceeding" supports the notion that a mere criminal investigation does not qualify as one.  *See* Black's Law Dictionary 1241 (8th ed. 2004).  As the commentary accompanying that definition succinctly explains, "'Proceeding' is a word much used to express the *business done in courts*" and "is an act done *by the authority or direction of the court*, express or implied."  *Id.* (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3–4 (2d ed. 1899)).  Indeed, in listing the various actions that might qualify as a "proceeding," in law the earliest "ancillary or provisional step[]" adjudged to qualify as such was an arrest, which—of course—would occur *after* the criminal investigation had already been completed.  *Id.* (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3–4 (2d ed. 1899)).

Thus the definition of the term "proceeding" strongly suggests that "a proceeding before a Federal Government agency which is authorized by law" does not encompass a criminal investigation.  *See* 18 U.S.C. § 1515(a)(1)(C).

2

What the term "proceeding" alone leaves mildly ambiguous, the broader statutory context makes entirely plain: an "official proceeding" does not include a criminal investigation.

Examining the term "proceeding" within the grammatical structure of the definition at issue, it becomes clear that the term connotes some type of formal hearing. The statute refers to proceedings "before a Federal Government agency"—a choice of phrase that would be odd if it were referring to criminal investigations. *Id.* The use of the preposition "before" suggests an appearance in front of the agency sitting as a tribunal. As the Fifth Circuit explained when addressing this same definition, "use[ of] the preposition 'before' in connection with the term 'Federal Government agency' . . . implies that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency." *United States v. Ramos*, 537 F.3d 439, 462–63 (5th Cir. 2008).[5] In short, a criminal investigation does not occur

---

[5] Although the government cites to two different out-of-circuit decisions in an effort to convince us that the term "official proceeding" in the obstruction of justice statute should be read broadly to include criminal investigations, we are not persuaded by their reasoning. *See United States v. Kelley*, 36 F.3d 1118, 1128 (D.C. Cir. 1994); *United States v. Gonzalez*, 922 F.2d 1044, 1055–56 (2d Cir. 1991).

The first, *Kelley*, did not even analyze the meaning of the term "official proceeding" as used in the obstruction of justice statute. Instead, the court "assume[d] that the AID Inspector General's investigation was a proceeding under § 1512 . . ." based on an agreement between the

parties.  *Kelley*, 36 F.3d at 1128.  This assumption carries no persuasive weight.

The second, *Gonzalez*, addressed the meaning of "official proceeding" as it is used in the statutory subsection delineating appropriate venue for § 1512 prosecutions.  *Gonzalez*, 922 F.2d at 1054–56.  That subsection specifies that venue lies "in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected."  18 U.S.C. § 1512(i).  The court in that case interpreted the phrase "official proceeding" broadly to encompass investigations, because it was concerned that if it were to exclude investigations from the scope of the term "official proceeding" in the venue provision, then that provision would, in effect, overrule the substantive subsections in § 1512.  *Id.* at 1055.  Specifically, the court was concerned that if the government could not obtain venue where an investigation was conducted, then a criminal could not be convicted of obstructing "an official proceeding [that was] not . . . pending or about to be instituted at the time of the offense" as the statute contemplated.  *Id.* at 1055–56; *see also* 18 U.S.C. § 1512(f)(1).

We are not persuaded that the Second Circuit correctly analyzed the meaning of the term official proceeding in this statute.  First, that court never carefully parsed the plain meaning of the definition for "official proceeding" but instead relied on Congress's "purpose" to "protect those persons with knowledge of criminal activity who are willing to confide in the government" to reach its conclusion.  *Id.* at 1055.  Second, that court never considered that the venue provision could extend to investigations, not through the term "official proceeding," but through the subsequent parenthetical phrase—"(whether or not pending or about to be instituted)." We thus decline to adopt the Second Circuit's reading in this case.

Instead, we find the decision of the Fifth Circuit in *Ramos* to be far more persuasive and relevant for our purposes.  *See Ramos*, 537 F.3d at 460–64.  There, unlike *Gonzalez*, the court directly analyzed the meaning of the phrase "official proceeding" as used in the substantive criminal provisions of § 1512.  *Id.*  Consulting the plain language of the statute and the broader context of the statutory scheme, that court determined that

"before a Federal Government agency" like a hearing or trial might; it is conducted "by" the agency in the field.

Looking more broadly to § 1512 where the term "official proceeding" is repeatedly used, it becomes even more apparent that a criminal investigation is not incorporated in the definition. Section 1512 refers to "prevent[ing] the attendance or testimony of any person in an official proceeding"; "prevent[ing] the production of a record, document, or other object, in an official proceeding"; and "be[ing] absent from an official proceeding to which that person has been summoned by legal process." 18 U.S.C. § 1512(a)(1)(A)–(B), (a)(2)(B)(iv). The use of the terms "attendance", "testimony", "production", and "summon[]" when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated.

Additionally, it would be odd to interpret "official proceeding" broadly to incorporate investigations when the statutory scheme already provides an explicit mechanism to criminalize obstruction of a criminal investigation. Section 1512(f)(1) states that "an official proceeding need not be pending or about to be instituted at the time of the offense" for criminal liability to attach under the obstruction of justice statute. By extending the statute's reach to criminal activities that occur before "official proceedings" commence, this subsection expands the scope of the obstruction of justice statute to include criminal investigations. By contrast, if we were to read the phrase "official proceeding" to include an FBI investigation, as the Government urges us to do, this

_____

internal agency investigations of employee misconduct were not official proceedings. *Id.* Our independent analysis of the text leads us to reach a similar conclusion with regard to criminal investigations.

subsection of the statute would work to criminalize actions taken before *an investigation* was even "pending or about to be instituted." *Id.* We do not think that the obstruction of justice statute was intended to reach so far back as to cover conduct that occurred even pre-criminal-investigation. Indeed, such a construction would be in tension with Supreme Court precedent requiring a nexus between the obstructive act and criminal proceedings in court. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005) (interpreting a materially similar subsection of § 1512 as requiring that the defendant have "knowledge that his actions are likely to affect [a] judicial proceeding" in order to have the "requisite intent to obstruct").

Thus, in light of the plain meaning of the term "proceeding," its use in the grammatical context of the "official proceeding" definition, and the boader statutory context, we conclude that a criminal investigation is not an "official proceeding" under the obstruction of justice statute.[6]

B

The district court in this case instructed the jury that "an 'official proceeding' includes an investigation by the Federal Bureau of Investigation." As we have already determined, such instruction was legally erroneous: an FBI investigation is not an official proceeding under the obstruction of justice statute.

---

[6] Because the meaning of the term "official proceeding" is plain and unambiguous, we decline the Government's invitation to consult the statute's legislative history. *See Robinson*, 519 U.S. at 340.

Normally, an error in a jury instruction requires reversal of the defendant's conviction "unless the [error] was harmless beyond a reasonable doubt." *United States v. Henderson*, 243 F.3d 1168, 1171 (9th Cir. 2001). But here, we do not need to determine whether the erroneous jury instruction was harmless. Both before the district court and on appeal, the Government conceded that, if an FBI investigation was not an official proceeding, then the obstruction of justice charges could not have been sustained on the evidence presented at trial.

The Government's concession regarding the sufficiency of the evidence conclusively resolves this case in the defendants' favor. Not only should their convictions be reversed, but retrial must also be barred. *United States v. Bibbero*, 749 F.2d 581, 586 (9th Cir. 1984) ("An appellate reversal of a conviction on the basis of insufficiency of the evidence has the same effect as a judgment of acquittal: the Double Jeopardy Clause precludes retrial."). We thus reverse and remand to the district court so that it may enter a judgment of acquittal on the obstruction of justice charges and resentence Johnson.[7]

**REVERSED** and **REMANDED.**

---

[7] Because we reverse the convictions on the basis of the statutory interpretation issue, we do not reach any of the defendants' remaining arguments raised on appeal.