**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mitchell BROWN, Defendant–Appellant.**

·No. 89–30292.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 1990.
Decided Aug. 21, 1990.

James L. Brandenburg, Brandenburg & Brandenburg, Albuquerque, N.M., for defendant-appellant.

Lance A. Caldwell, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before FLETCHER, FERGUSON and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

After the collapse of State Federal Savings & Loan Association (State Federal), a savings and loan association of Corvallis, Oregon, an indictment was filed against Brian J. Olsvik, Thomas E. Nevis, Mitchell

Brown, and others. They were charged with conspiracy to defraud the United States, the Federal Home Loan Bank Board (FHLB), and the Federal Savings & Loan Insurance Corporation (FSLIC), and with the commission of multiple substantive offenses arising out of that conspiracy.

Their illegal acts were alleged to have consisted of the use of false entries in the books of State Federal, and other actions, all of which were designed to allow Nevis to obtain loans from State Federal which far exceeded the lending limits imposed upon that institution.

Brown was found guilty of the conspiracy and of various of the substantive charges, and he appeals his conviction. He objects to the fact that lending limit regulations were discussed at his trial, asserts that evidence of a later loan on his behalf, which was made to Nevis from another financial organization, should not have been admitted, and further claims that the evidence was insufficient to convict him. We affirm, except as to his conviction for conspiracy as to which we reverse.

## BACKGROUND

We will not pause long to detail the background of this case. While there were many transactions and each had a degree of complexity, the basic scheme is easily outlined.

State Federal was insured by FSLIC and was subject to examination by FHLB. It, like many savings and loans, ran into financial difficulty. It sought salvation by hiring Larry Waters as its President and Chief Executive Officer. He immediately commenced an aggressive loan campaign for the purpose of generating fee income for State Federal and he hired Olsvik as the Vice President who was to help him with that program. Waters also sought to get certain real estate off of the books. That was land which had been foreclosed upon, and which earned little revenue for State Federal.

Nevis was a businessman and a real estate developer who already had a number of loans with State Federal. He, Waters and Olsvik formed a rather close business relationship and the latter gentlemen decided that their program would be enhanced by entering into transactions with Nevis. Unfortunately, all of the steps toward that solution involved lending more money to Nevis. Even more unfortunately, State Federal was subject to a "loans to one borrower" regulation, 12 C.F.R. § 563.9–3 (1985) (recodified at 12 C.F.R. § 563.93 (1990)), which limited the amount that could be loaned to any one person, and Nevis had reached that limit.

With that regulation lurking in the background, Waters, Olsvik and Nevis commenced a series of maneuvers in early 1984. That series continued through the year and on into the early part of 1985. Each of those was designed to conceal the fact that Nevis was the actual borrower of certain funds, a concealment accomplished by the use of various nominees, the use of schemes to direct proceeds from one person to another, and the like. The actual facts were not reflected in the records of State Federal. To put it simply, then, Nevis received funds he should not have received and did so because he, Waters and Olsvik were willing to conceal the facts from State Federal, its regulators and FSLIC.

In October of 1984, Brown participated in one of the transactions. He, in effect, had one of his companies (Marin Federal) purchase certain property from Nevis and obtain a loan from State Federal to finance that purchase. The money went to Nevis, and Nevis retained possession of and the right to repurchase the property. Brown guaranteed the loan but Nevis agreed to pay it off. The sale would not have been made had repurchase not been agreed to in advance. Brown and his company were quite clearly no more than nominees and vehicles for getting cash from State Federal to Nevis.

Brown was indicted with Nevis, Olsvik, and other defendants. Brown was charged with conspiracy for his part in the scheme to defraud State Federal. 18 U.S.C. § 371. Brown was also charged with aiding and abetting Olsvik's bank fraud and false entry. 18 U.S.C. §§ 657, 1006. The October

1984 transaction was the sole basis of the conspiracy count and other charges against Brown. Brown was tried separately from Olsvik and Nevis and was convicted of all three counts against him.

Against this backdrop we will consider Brown's attacks on his convictions.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review evidentiary rulings for abuse of discretion. *United States v. Bonallo,* 858 F.2d 1427, 1435 (9th Cir.1988); *Bail Bonds by Marvin Nelson, Inc. v. Commissioner,* 820 F.2d 1543, 1547 (9th Cir.1987). This standard applies to rulings under Fed. R.Evid. 403. *United States v. Layton,* 855 F.2d 1388, 1402 (9th Cir.1988), *cert. denied,* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989).

When a motion for acquittal has been made, our standard of review is whether, when the evidence is viewed in the light most favorable to the government, any rational trier of fact could have found the elements of the alleged offense beyond a reasonable doubt. *See, e.g., United States v. Harris,* 792 F.2d 866, 868 (9th Cir.1986).

## DISCUSSION

A. *Refusal to Suppress Reference to Regulation.*

■ Brown complains that there was reference to the loans to one borrower regulation at his trial. 12 C.F.R. § 563.9–3 (recodified at 12 C.F.R. § 563.93 (1990)). However, the jury was clearly informed that violation of the regulation did not create any criminal liability. Rather the regulation helped form the backdrop of defendants' activities and to outline a motive for their convoluted financial transactions—transactions which bled off great sums of State Federal's money and provided Nevis with substantial and necessary transfusions.

There is an undoubted danger in the use of regulations in this area, but we have made it quite clear that it is proper to use them as background. *See United States v. Smith,* 891 F.2d 703, 710 (9th Cir.1989); *United States v. Wolf,* 820 F.2d 1499, 1504–05 (9th Cir.1987), *cert. denied,* 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988).

Here the regulation did help explain the background of and motive for the financial manipulations in which Brown participated. It was proper to refer to it for that purpose.

B. *Admission of Evidence of Subsequent Loan.*

■ Shortly after Brown acted as a nominee for the purpose of funneling State Federal's money to Nevis, the favor was repaid. Nevis acted in the same capacity for the purpose of funneling money from First National Bank of Marin to Brown. The government's theory was that the propinquity of the two transactions helped illuminate Brown's motive for becoming a part of the Nevis–State Federal ploy. Surely that was a reasonable inference.

Application of a simple circumstantial reasoning process shows that it took no great leap of logic to divine that a kind of logrolling was going on here. Each person simply helped the other obtain money that might not otherwise have been available. Thus, it was relevant. Fed.R.Evid. 402 and 404(b). Nor was the evidence more prejudicial than probative. Fed.R.Evid. 403. It helped answer an obvious question: why would a person do such a thing and take such a risk if no benefit to himself was forthcoming? The district court did not err.

C. *Sufficiency of Evidence to Convict Brown of the Conspiracy Charged in the Indictment.*

■ As we have already pointed out, the indictment charged Brown as a co-conspirator in the plot hatched by Olsvik, Waters and Nevis in February of 1984, although Brown only participated in a single transaction in October of that year.

Brown made a proper motion for acquittal and now asserts that mere participation in a single deed with no knowledge whatever of the scope, or even the fact, of the charged conspiracy is not sufficient to sustain a conviction. We find merit in that assertion but we must first pause a moment to discuss the somewhat arcane law in this area before applying it to these facts.

We start with the critical fact that the trial court instructed the jury that in order to convict Brown it must find that he was a member of the single conspiracy charged in the indictment. If he did conspire but not as a member of that conspiracy, a not guilty verdict was required. This is of no little importance. It underscores the fact that this is not a case where a trial court permitted a defendant to be convicted of a single overall conspiracy even though only separate conspiracies were shown. *See Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Rather, this is a case where the jury was told it must find that Brown was a member of the overall conspiracy adumbrated in the indictment or else find that he was not guilty at all.

We have frequently had occasion to outline the proper approach to these questions and, rather than rephrase the various tests, we will quote one of our cases at some length. In *United States v. Arbelaez*, 719 F.2d 1453, 1457–58 (9th Cir.1983), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984), we said:

Appellants contend that the government did not prove a single overall conspiracy as set forth in the indictment, but instead proved multiple conspiracies resulting in a variance between the terms of the indictment and the proof at trial....

To establish the existence of a single conspiracy, as compared to multiple conspiracies, the basic "test is whether there was 'one overall agreement' to perform various functions to achieve the objectives of the conspiracy." ... Moreover, the "general test also comprehends the existence of subgroups or subagreements." ... We have also said that "[t]he evidence need not be such that it excludes every hypothesis but that of a single conspiracy; rather it is enough that the evidence adequately support a finding that a single conspiracy exists." ...

To determine whether the evidence supports the existence of one overall criminal venture, relevant areas of inquiry include "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of times and goals." (citations omitted)

That was not all, for we went on to add:

Appellants next contend that they were not members of the conspiracy. The evidence, however, does not support their assertions. Once the government has established that a conspiracy exists, "evidence of only a slight connection is necessary to convict a defendant of knowing participation in it." ... Moreover,

[t]he government need not show direct contact or explicit agreement between the defendants. It is sufficient to show that each defendant knew or had reason to know of the scope of the conspiracy and that each defendant had reason to believe that [his] own benefits were dependent upon the success of the entire venture.

*Id.* at 1458–59 (citations omitted). In accord with both of these quotations is *United States v. Bibbero*, 749 F.2d 581, 586–88 (9th Cir.1984), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2330, 85 L.Ed.2d 847 (1985). *See also United States v. Morse*, 785 F.2d 771 (9th Cir.), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2925, 91 L.Ed.2d 553 *and* 479 U.S. 861, 107 S.Ct. 209, 93 L.Ed.2d 139 (1986).

We note that given the elements used to determine whether there was a single conspiracy, it may seem to follow as the night the day that the test set forth in the second quotation would be satisfied if the test set forth in the first quotation were satisfied. That would make the second quotation's test appear superfluous. That, indeed, was

the result in *Arbelaez*, but *Bibbero* showed that a single overall conspiracy among others could be found and the question of a particular defendant's participation in that conspiracy could be reserved for a separate determination. With these principles at hand, we now turn to the facts of this case.

The nature of the scheme was a conspiracy to place large sums of money in the hands of Nevis so that he could purchase property from State Federal and continue servicing that debt and others, thereby keeping the whole scheme afloat. Accomplishing this required numerous loans and other activities, without which the series of transactions would collapse. The major participants, Waters, Olsvik and Nevis, at least, remained the same throughout—in fact, their joint cooperation was necessary at virtually every step. Each of these three also participated throughout the series of transactions, although from time to time various other individuals were needed to act as nominees and to otherwise help the scheme succeed. Finally, the transactions were related and interrelated. Each was designed to contribute to the overall success of the conspiracy. Given all of this consistency and interrelationship, it is certainly safe to say that there was evidence from which the jury could find a single overall conspiracy.

That, however, does not mean that Brown was a member of the conspiracy. While only slight evidence is needed to convict a person of knowing participation, we have emphasized the fact that there must be evidence to show knowledge and dependency. There is not a shred of evidence of that in this case. The most the evidence shows is that Brown participated in a single transaction for Nevis' benefit. Nothing at all shows that he knew of other transactions, or that he knew there was any overall plan at all. This is not like a narcotics conspiracy where each person can be deemed to know that he is part of an overall distribution network, each portion of which must work if anyone is to benefit. *E.g.*, *United States v. Perry*, 550 F.2d 524, 528–31 (9th Cir.), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 228 *and* 434 U.S. 827, 98 S.Ct. 104, 54 L.Ed.2d 85 (1977);

*United States v. Baxter*, 492 F.2d 150, 160–63 (9th Cir.1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). Nor is it a situation where a person has become immersed in the overall enterprise, even though he may not have participated in earlier transactions. *Bibbero*, 749 F.2d at 588. Nor is it even a case where a person is so involved in the overall scheme that his knowledge can reasonably be inferred. *See Morse*, 785 F.2d at 775.

In other words, this case is a *rara avis* in our conspiracy determinations. It, like *Kotteakos*, presents a situation where any number of people could participate in certain activities without reason to know that others were afoot. Unlike *Kotteakos*, the interrelationship of the activities does not require a finding that there was more than one conspiracy, although it might justify such a finding. The vice here is at a different level. Given one conspiracy, it is not possible to justify a decision that Brown knew of or depended upon it, even though its success depended upon him in part. He could hardly be held to have agreed to that of which he knew naught.

Therefore, Brown's conviction for conspiracy must be reversed on the basis of insufficiency of the evidence. Reversal has the same effect as an acquittal on that count.

### D. *Substantive Offenses.*

■ Brown also claims that the evidence was not sufficient to sustain his convictions of the substantive offenses of misapplication, 18 U.S.C. § 657, and false entry. 18 U.S.C. § 1006. He is wrong.

As to the former, the evidence amply showed that Brown engaged in activities which misrepresented the true borrower and true purpose of the loans, all with the intention of deceiving State Federal officials, FSLIC, and FHLB. *See Wolf*, 820 F.2d at 1502–03; *United States v. Kennedy*, 564 F.2d 1329, 1339 (9th Cir.1977), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).

■ As to the latter, there can be little doubt that the evidence supported a deter-

mination that Brown aided and abetted the making of an entry that he knew to be false in the bank records, with the intent that officials of State Federal, FSLIC, and FHLB would be deceived. *See Wolf*, 820 F.2d at 1504.

## CONCLUSION

This case is but one small chapter in the sordid savings and loan scandal that has swept our country. However, it illustrates one of the types of maneuvers which brought down many an institution.

While others were much more deeply involved in the demise of State Federal, the activities of Brown contributed to that disaster. We affirm his conviction in all respects other than the determination that he was guilty of the overall conspiracy among Waters, Olsvik, and Nevis. We reverse as to that because it was not shown that he had any reason to know of its scope, or even for that matter of its existence.

AFFIRMED in part and REVERSED in part.