988 F.2d 124
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Mitchell NOWLIN, Daniel Aloysius Jones, William Dee
Morris, and Robert Wells, Defendants-Appellants.
 Nos. 91-30429, 91-30446, 91-30460, and 91-30468.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 6, 1993.
Decided March 1, 1993.
As Amending on Denial of Rehearing and Rehearing
En Banc April 16, 1993.
 
 Appeal from the United States District Court for the District of Montana, Nos. CR-90-20-H-CCL, CR-90-5-BU-CCL; Charles C. Lovell, District Judge, Presiding.
 D.Mont.
 AFFIRMED.
 Before EUGENE A. WRIGHT, FARRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Codefendants Daniel Jones and William Nowlin appeal the district court's denial of their motion to dismiss on grounds of double joepardy and collateral estoppel. Codefendants William Morris and Robert Wells appeal their jury trial convictions for conspiracy to defraud the United States in violation of 18 U.S.C. § 371, conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846, conspiracy to invest illegal drug profits into a business in violation of 21 U.S.C. §§ 854 and 846, and investment of proceeds from drug transactions into a business in violation of 21 U.S.C. §§ 854 and 855. We affirm.
 
 
 3
 I. Facts.
 
 
 4
 On February 23, 1990, codefendants Daniel Jones and Robert Wells were indicted on one count of distributing methamphetamine in violation of 21 U.S.C. § 841(a) ("Butte indictment"). Subsequently, on September 21, 1990, the government filed a six count indictment against Jones and Wells, as well as three others, William Morris, William Nowlin, and Gene Browning ("Helena indictment"). All five defendants were charged in four of the counts:
 
 
 5
 Count I: conspiracy to defraud the United States in violation of 18 U.S.C. § 371.
 
 
 6
 Count IV: conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846.
 
 
 7
 Count V: conspiracy to invest illegal drug profits into a business in violation of 21 U.S.C. §§ 854 and 846.
 
 
 8
 Count VI: investment of proceeds from drug transactions into a business in violation of 21 U.S.C. §§ 854 and 855.
 
 
 9
 Wells and Jones were charged in Counts II and III with filing false corporate tax returns in violation of 21 U.S.C. § 7206(2). Gene Browning accepted a plea agreement with the government and the others proceeded to trial.
 
 
 10
 The government previously had obtained guilty pleas pursuant to plea agreements from Don Wogamon and three members of his family. Wogamon was a key figure in the drug manufacturing and money laundering conspiracies. When he was first indicted in May of 1987, William Morris served as counsel for him and his wife. Once the government was able to debrief Wogamon, they obtained evidence to support charges against the five defendants named in the Helena indictment. Wogamon was one of the government's key witnesses at trial. Browning also testified pursuant to his plea agreement.
 
 
 11
 Wogamon testified that he began manufacturing and distributing methamphetamine with Daniel Jones in 1983. The following year, Jones introduced Wogamon to Robert Wells. Wells gradually became more involved with Wogamon in the manufacturing process. Wogamon said that he and Wells "cooked" methamphetamine a number of times over the next couple of years.
 
 
 12
 In 1984, Wogamon formed a corporation called Medallion Minerals for the purpose of mining gold in the Butte, Montana area. Proceeds from drug sales were deposited in Medallion in order to make the income look legitimate. Wells and Jones agreed to invest $1.8 million in Medallion from their methamphetamine manufacturing business. They received stock from the corporation in exchange. During 1984 and 1985, Wogamon helped Wells and Jones with their manufacturing in Santa Rosa, California and flew back to Montana with money to deposit in Medallion accounts. All deposits were under $10,000 to avoid having the banks file currency transaction reports. The cash was reflected as gold sales on Medallion's books.
 
 
 13
 Wells and Jones had a falling out in early 1985, and Jones decided not to finance Medallion further. Wogamon said he last saw Jones in February of 1985. In June 1985, William Morris, a longtime friend of Wogamon's, introduced him to Gene Browning, who was involved in the mining business. Browning had developed a device to extract gold from ore, and was trying to find interested investors. Wogamon and Wells agreed to put one million dollars into Browning's Nevada corporation. The money was delivered in four $250,000 cash payments.
 
 
 14
 Browning subsequently introduced Wogamon to William Nowlin. Nowlin was looking for investors to fund a mining venture. In July 1985, Wogamon and Wells agreed with Nowlin to provide one million dollars to fund a new company called Shadow Mountain Systems, Inc. In exchange, they received an interest in the corporation. The million dollars was paid in four $250,000 cash installments. Nowlin used the money to purchase equipment for Shadow Mountain. Wogamon testified he informed Nowlin that the money came from the proceeds of drug sales.
 
 
 15
 In September 1985, Wells and Wogamon manufactured a fifty pound batch of methamphetamine at the Santa Rosa laboratory. After completing the batch, Wells was arrested with twenty-five pounds in his car. Wells had entered Nowland's house while state agents were executing a search warrant. An agent patted down Wells and felt a hard object in his pants pocket. The agent removed a film cannister from Wells' pocket and opened it. It contained a small amount of methamphetamine. Since the agent improperly opened the cannister, the district court suppressed evidence of the methamphetamine found therein and the twenty-five pounds subsequently seized from Wells' car. Nevertheless, Wogamon testified at trial that Wells told him that he had been arrested with the twenty-five pounds. This testimony was presented by the government to explain the facts and circumstances concerning the moving of the drug lab from Santa Rosa to near Las Vegas.
 
 
 16
 The lab equipment was initially moved to trailers located on Shadow Mountain's property. Nowlin had keys to the trailers and allowed Wells and Wogamon to put the equipment there. Wells and Wogamon attempted to manufacture methamphetamine at the site, but their efforts were not very successful. Wogamon testified that Nowlin occasionally came to the site and asked what was going on.
 
 
 17
 At one point, when there was $250,000 cash infusion into Medallion that needed to be covered, Morris agreed to put together a story and supporting documentation to show that the cash had come from the International Fuel Development Corporation, a foreign corporation. The cash was, in fact, proceeds from methamphetamine sales.
 
 
 18
 In March 1986, Medallion Minerals filed for bankruptcy, and Morris prepared the necessary filings. Morris filed a false bankruptcy Disclosure Statement with the bankruptcy court. In October 1986, a grand jury subpoena was issued requiring Medallion to produce its records and books. In an effort to buy time, Morris suggested that he hold himself out as custodian of Medallion's records. This gave Wogamon and Morris time to alter corporate documents and create minutes of meetings that never occurred in an effort to throw off the grand jury.
 
 
 19
 During his efforts to "fix" the records, Morris caused 3.1 million shares of Medallion stock to be issued to himself in order to cover the $250,000 in drug sale proceeds that was supposed to have been received from the International Fuel Development Corporation. Wogamon also testified that he and Morris altered records to reflect gold production and sales that never occurred in order to cover drug money deposits.
 
 
 20
 Wogamon was indicted in May of 1987. Although Morris initially served as his attorney, he was eventually replaced and ultimately named in the subsequent indictment filed in September of 1990.
 
 
 21
 II. Appellants Nowlin & Jones.
 
 
 22
 A. Double Jeopardy.
 
 
 23
 We review a district court's denial of a motion to dismiss on double jeopardy grounds de novo. United States v. Lun, 944 F.2d 642, 644 (9th Cir.1991). "As a general principle, retrials following hung juries do not cause double jeopardy because the failure of the jury to reach a verdict means that jeopardy has not yet terminated." United States v. Seley, 957 F.2d 717, 719-20 (9th Cir.1992) (citation omitted). The "same conduct" test promulgated by the Supreme Court in Grady v. Corbin, 495 U.S. 508 (1990), does not apply to a retrial following a hung jury because it does not constitute a successive prosecution. Seley, 957 F.2d at 720. Since this is not a successive prosecution, double jeopardy does not bar retrial except to the extent it is implicated in the collateral estoppel analysis.
 
 B. Collateral Estoppel.[1]
 
 24
 The applicability of collateral estoppel is reviewed de novo.[2] Id. To determine whether collateral estoppel bars reprosecution of a particular charge, we must
 
 
 25
 examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.
 
 
 26
 Id. at 721 (quoting Ashe v. Swenson, 397 U.S. 436, 444 (1970)); see also United States v. Bailin, 977 F.2d 270, 275-80 (7th Cir.1992) (discussing relationship between double jeopardy and collateral estoppel). Thus, we must determine which ultimate facts the jury decided in acquitting each defendant.
 
 
 27
 1. Appellant Jones.
 
 
 28
 Appellant Jones was found not guilty on Counts I, II & III of the Helena indictment. He faces retrial on Counts IV, V of the Helena indictment and the single count from the Butte indictment. All of the jury's not guilty verdicts were for offenses that involved defrauding the Internal Revenue Service (IRS). The jury rationally could have found Jones not guilty on the ground that he wasn't involved in a scheme to defraud the IRS. Since such involvement is not required to prove any of the offenses for which Jones faces retrial, collateral estoppel does not apply. The district court's denial of Jones' motion to dismiss was proper.
 
 
 29
 2. Appellant Nowlin.
 
 
 30
 We also reject Nowlin's argument that his retrial on Count V of the Helena indictment is barred by collateral estoppel. The jury's convictions of Nowlin's codefendants on Counts IV, V and VI establish the existence of the conspiracies and the substantive crime.
 
 
 31
 Nowlin's acquittal on Count IV means only that the jury did not believe he joined the conspiracy to manufacture or distribute methamphetamine. Likewise, his acquittal on Count VI must have been because the jury did not believe that he acted as a principal in the drug distribution scheme. The acquittals on Counts IV and VI were consistent with each other and would be consistent with a conviction on Count V.
 
 
 32
 The jury must have hung on Count V because they could not agree on whether Nowlin joined that conspiracy. To convict Nowlin on Count V, the government need not raise the only ultimate issues of fact decided in his favor--his lack of involvement in the drug conspiracy and the actual money laundering. No factual issue that was necessarily resolved in Nowlin's trial is inconsistent with the existence of any element of Count V. Collateral estoppel should not bar reprosecution on Count V.
 
 
 33
 III. Appellant Morris.
 
 
 34
 A. Pre-indictment delay.
 
 
 35
 Morris claims that the prosecution unduly delayed its filing of an indictment against him. The district court held that even if actual prejudice existed, there was no due process violation because the government's reasons for delay were sufficient. We review a district court's denial of a motion to dismiss on the ground of pre-indictment delay for an abuse of discretion. United States v. Huntley, 976 F.2d 1287, 1290 (9th Cir.1992); United States v. Sherlock, 962 F.2d 1349, 1354 (9th Cir.1989), cert. denied, 113 S.Ct. 419 (1992).
 
 
 36
 To establish pre-indictment delay, a defendant must show: (1) that he suffered actual, non-speculative prejudice from the delay; and (2) that the length of the delay, when balanced against the government's reasons for delay, offends fundamental conceptions of justice. Huntley, 976 F.2d at 1290. Morris claims he was prejudiced because he found it harder to defend himself after having obtained information about the conspiracies from the Wogamons while representing them. This made it difficult for him to establish the extent of his knowledge prior to the Wogamons' indictment. To show actual prejudice, a defendant must meet the heavy burden of showing that the prejudice was definite, and not merely speculative. Id. Even if the level of prejudice demonstrated by Morris were sufficient to constitute "actual prejudice," when balanced against the government's reasons for delay (i.e., that they would not indict Morris until they had a case against him), the length of delay does not offend fundamental conceptions of justice. The district court properly denied Morris' motion to dismiss.
 
 
 37
 B. Wharton's rule.
 
 
 38
 Morris challenges his conviction on Count V for conspiracy to invest income derived from violations of 21 U.S.C. §§ 841(a)(1) and 846. He claims that the count should have been dismissed on the ground that the alleged offense violates Wharton's Rule. Absent legislative intent to the contrary, Wharton's Rule bars prosecution for conspiracy when the underlying substantive crime is of such a nature as to necessarily require the participation of two people. United States v. Castro, 887 F.2d 988 (9th Cir.1989). The rule applies only to "offenses requiring concerted criminal activity and congruence between the agreement and offense, such as adultery, incest, bigamy, and dueling." Id. at 996. It also requires that the parties to the agreement are the only persons participating in substantive offense, that the immediate consequences of crime fall solely on the participants, and that the agreement constituting the substantive offense is unlikely to pose any threat to society which conspiracy laws are meant to prevent. Id. Wharton's Rule does not bar a charge of conspiracy to commit a substantive offense merely because the offense requires that defendant act as a principal. See United States v. Huber, 772 F.2d 585, 591 (9th Cir.1985).
 
 
 39
 Here, the substantive offense of investing illegal profits requires only one person. While profits have to be acquired from a separate crime in which defendant acted (or would act) as principal, that is one step removed from the investment crime at issue. In addition the fact that concerted activity is not required, Morris failed to show that the alleged conspirators were the only people participating in the substantive offense, that the immediate consequences of the crime fall solely on the participants, or that an agreement to launder drug money does not pose any threat to society which conspiracy laws are meant to prevent. Thus, the district court properly denied Morris' motion to dismiss.
 
 
 40
 C. Sufficiency of Evidence.
 
 
 41
 Morris contends that the district court erred in denying his motion for acquittal on the grounds that his involvement in the criminal activity, if any, came after the conspiracies had ended. This argument essentially raises a sufficiency of evidence question on Counts I, IV, V & VI. See e.g., United States v. Kenny, 645 F.2d 1323, 1335 (9th Cir.1981). To determine if the evidence presented at trial is sufficient, we review the evidence in the light most favorable to the government to determine if any rational trier of fact could have found the essential elements of the offenses beyond reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992). On the three conspiracy counts, the existence of the conspiracies is not challenged. Morris merely claims he was not part of them. To prove Morris was a member of the conspiracies, the government had to show that Morris knew or had reason to know of scope of conspiracies and reason to believe his own benefits were dependent on success of the entire venture. United States v. Brown, 912 F.2d 1040, 1043 (9th Cir.1990). Only a slight connection is needed to convict defendant for knowing participation. Id.
 
 
 42
 The government presented evidence that Morris helped launder drug money and altered documents to throw off the IRS and the grand jury investigation into the drug manufacturing and money laundering operation. In particular, the evidence showed that Morris arranged a meeting between Browning and Wogamon for the purpose of depositing one million dollars of drug sales proceeds into Shadow Mountain Systems; he filed a false Disclosure Statement to the bankruptcy court in order to hide any indication that Medallion was being used to launder drug money; he created a cover story for the receipt of $250,000 by Medallion by showing on the books that it came from the International Fuel Development Corporation, and by issuing himself 3.1 million shares of Medallion stock to cover the transaction; he altered corporate documents with Wogamon in order to show drug proceeds as gold sales; and he threatened Browning prior to Browning's grand jury appearance in November 1986.
 
 
 43
 The evidence presented showed that his participation in the conspiracies occurred while they were ongoing, not merely afterward as he asserts. The acts of concealment used to show his participation are not like those in Grunewald v. United States, 353 U.S. 391 (1957), because they were part of the conspiracy to defraud the government and launder money rather than an attempt to cover up after conspiracy ended. Thus, his actions were not part of a second conspiracy as he alleges. The evidence presented, viewed in the light most favorable to the government, was sufficient to support his convictions on all counts.
 
 
 44
 IV. Appellant Wells.
 
 
 45
 Appellant Wells challenges his conviction on the ground that the district court improperly allowed the jury to hear testimony from Don Wogamon concerning Wells' arrest for possession of twenty-five pounds of methamphetamine. We review de novo a district court's denial of a motion to suppress evidence. United States v. Miller, 812 F.2d 1206, 1208 (9th Cir.1987). If the district court improperly admitted the evidence, the conviction may nonetheless by sustained if the court's error was harmless beyond a reasonable doubt. Arizona v. Fulminante, 113 L.Ed.2d 302, 322 (1991); United States v. Shirley, 884 F.2d 1130, 1132 (9th Cir.1989).
 
 
 46
 The district court had previously suppressed evidence of the methamphetamine found in the film cannister that agents executing a search at Nowland's house removed from Wells' pocket and improperly opened. The court also suppressed the twenty-five pounds of methamphetamine subsequently seized from Wells' car. Nonetheless, in his testimony at trial, Don Wogamon referred to Wells' arrest and the twenty-five pounds of methamphetamine. These references were not elicited by the prosecutor's questions. Wogamon volunteered the information in response to unrelated questions from the prosecutor. The district judge admonished the jury to disregard Wogamon's unresponsive references to Wells' arrest and the methamphetamine involved. RT 1352-53, 1371-74.
 
 
 47
 Wells claims that Wogamon's testimony should have been excluded under the "fruit of the poisonous tree" doctrine. See Wong Sun v. United States, 371 U.S. 471 (1963). If, however, evidence is obtained from a source that was sufficiently independent of the illegality, it need not be suppressed. Miller, 812 F.2d at 1208. Wogamon knew that Wells had the methamphetamine because they had just made it together. Wells telephoned Wogamon to tell him that he had been arrested. While this probably constitutes an "independent" source, we do not have to resolve the issue because we find that any error caused by the jury's exposure to the testimony was harmless beyond a reasonable doubt.[3] The other evidence of Wells' involvement in the charged offenses was overwhelming, and there is no reason to believe this part of Wogamon's testimony was particularly compelling or contributed to Wells' conviction. See Fulminante, 113 L.Ed.2d at 322.
 
 
 48
 AFFIRMED.
 
 
 49
 KLEINFELD, Circuit Judge, concurring in part and dissenting in part.
 
 
 50
 I concur with the majority's holding except on the issue of collateral estoppel concerning appellant Nowlin. I therefore respectfully dissent from Part II.B.2. of the decision.
 
 
 51
 Appellant Nowlin was found not guilty on Counts I, IV and VI of the Helena indictment. The government sought to retry him on Count V, for conspiracy to invest illegal drug profits into a business. Since the jury found Nowlin's codefendants, Robert Wells and William Morris, guilty on Counts I, IV, V and VI of the Helena indictment, they necessarily decided that the alleged conspiracies existed and the substantive crimes occurred. Thus, Nowlin's lack of involvement in the conspiracy (i.e., being a willful and knowing participant) must have been the determinative factor in finding him not guilty on Count IV. As the majority correctly notes, the "jury must have hung on Count V because they could not agree on whether Nowlin joined that conspiracy."
 
 
 52
 The evidence presented by the government to show Nowlin's involvement in the methamphetamine manufacturing conspiracy alleged in Count IV is nearly identical to the evidence presented for Count V. The government presented evidence that Nowlin laundered drug money by using it to fund a mining enterprise. The government sought to prove that Nowlin was involved in the methamphetamine manufacturing conspiracy (Count IV) primarily through his actions to disguise the drug sales proceeds as legitimate business income. These alleged actions are also the basis of the government's case for Count V. The only fact alleged in the indictment under Count IV that is not alleged under Count V is an assertion that Nowlin provided storage space for the methamphetamine manufacturing equipment. Although this additional evidence may have added to their case, the government did not have to prove that Nowlin provided the storage space to establish his involvement in the methamphetamine manufacturing conspiracy. His involvement in the conspiracy alleged in Count IV would have been established if the government had proven either (1) that he had knowingly laundered the drug money or (2) that he had provided coconspirators with storage space for their manufacturing equipment. Thus, in order to acquit him, the jury must have found that neither of these facts were proven.
 
 
 53
 Although the majority acknowledges that Nowlin's "lack of involvement in the drug conspiracy" was established in his favor, it concludes that this favorable resolution is not inconsistent with finding that Nowlin was involved in the drug money laundering conspiracy alleged in Count V. I think this is a logical possibility on the charges alone, but not a factual possibility on the evidence which was introduced. The government's case against Nowlin on the drug money laundering conspiracy charge is based on the same evidence of his involvement in the drug manufacturing conspiracy through knowingly receiving drug money and investing it in a business. By acquitting him on Count IV because his involvement in the conspiracy was not established, the jury foreclosed the issue of whether his involvement was sufficient to support a conviction under Count V. Since Nowlin's involvement was found insufficient to support a finding that he was part of the methamphetamine manufacturing conspiracy, no rational jury could conclude that he was sufficiently involved in drug money laundering conspiracy to convict him. Thus, in my view, collateral estoppel should bar retrial of Nowlin on Count V of the Helena indictment.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Appellants Jones and Nowlin argue that there was an "implied acquittal" on the hung jury counts. The counts at issue are separate and distinct offenses. None were lesser included offenses, so there could have been no implied acquittal. See e.g., Green v. United States, 355 U.S. 184 (1957) (holding that a conviction of second degree murder barred reprosecution of first degree murder charge after the conviction was reversed on appeal)
 
 
 [2]
 The district court held that collateral estoppel did not apply because the retrial is a continuation of first proceeding, and therefore issues could not be foreclosed by the acquittals. While this reasoning is appropriate for determining whether to apply the Grady "same conduct" test, it was implicitly rejected by this court's collateral estoppel analysis in Seley, 957 F.2d 717
 
 
 [3]
 Since we find that Wogamon's references to Wells' arrest and the twenty-five pounds of methamphetamine were harmless beyond a reasonable doubt, it is unnecessary for us to decide whether the district court properly admitted the evidence under Federal Rule of Evidence 403. See Shirley, 884 F.2d at 1132