15 F.3d 1093
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph C. MILLER, Defendant-Appellant.
 No. 92-30424.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 2, 1993.*
Decided Jan. 12, 1994.
 
 Before: TANG, FARRIS, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This case arises out of allegations by the Government that Joseph C. Miller unlawfully amended the Personnel Policies and Procedures Manual of the Home Savings Bank ("Bank") in Anchorage, Alaska, in violation of a Capital Forbearance Agreement ("Forbearance Agreement") between the Bank and the Federal Savings and Loan Insurance Corporation ("FSLIC").
 
 
 3
 Mr. Miller was convicted of two charges, Counts I and III of the indictment. Count I was for making false entries in the Bank's Personnel and Police Procedures Manual in violation of 18 U.S.C. Secs. 1006 and 2 (Count I). Count III was for misapplication of bank funds in violation of 18 U.S.C. Secs. 657 and 2 (Count III). The judgment, however, states that Mr. Miller was convicted of Count I and Count II, bank fraud, which was the second count of the indictment. The judgment confuses Count II and Count III of the indictment. Fortunately, the offense level calculations in the presentence report were based on Mr. Miller's convictions of Counts I and III of the indictment and not Counts I and II. We are convinced that the judgment reflects merely a clerical mistake. This case is therefore remanded to the district court for correction of the judgment.
 
 I. Impeachment
 A.
 
 4
 We review a trial court's decision to limit the scope of cross-examination for an abuse of discretion. United States v. Dischner, 974 F.2d 1502, 1514 n. 12 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1290 (1993). A trial court abuses its discretion in limiting cross-examination whenever it prevents the jury from receiving sufficient information to judge the biases and motivations of a witness. U.S. v. Guthrie, 931 F.2d 564, 568 (9th Cir.1991). Nonetheless, this Court "must have a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached upon consideration of the relevant factors." United States v. Whitworth, 856 F.2d 1268, 1283 (9th Cir.1988), cert. denied, 489 U.S. 1084 (1989).
 
 
 5
 Mr. Miller claims that he should have been allowed to cross-examine Debra Pietrok about her sexual relationship with Bank Chairman Robert Gillam. The district court ruled that Ms. Pietrok's sexual relationship with Mr. Gillam was a collateral matter that was "not probative of her truthfulness or untruthfulness on the testimony that she [gave at] trial." [ER at 173-74.]
 
 
 6
 To the extent Mr. Miller maintains the contention he argued at trial, the district court's ruling is not an abuse of discretion in light of our decision in United States v. Payne, 944 F.2d 1458 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1598 (1992), in which "the probative value of minor inconsistencies regarding an obviously embarrassing situation" was found to be "virtually nil and does not outweigh the prejudicial effect of introducing [the witness's] collateral sexual conduct." 944 F.2d at 1469.
 
 
 7
 The Government, however, asserts that Mr. Miller now, for the first time on appeal, argues that Ms. Pietrok's affair with Mr. Gillam was relevant to establishing her alleged bias "to maximize [Mr.] Miller's role and to protect or keep secret her relationship with [Mr.] Gillam by minimizing his role." [Blue Brief at 23.] Thus, the Government argues, Mr. Miller must establish that the district court's ruling was "plain error." See Fed.R.Crim.P. 52(b); Dischner, 974 F.2d at 1514.
 
 
 8
 We need not decide whether to review for abuse of discretion or plain error. The record supports the district court's decision under either standard. Ms. Pietrok admitted during trial that Mr. Miller was one person at the Bank she did not like. Thus, the jury was made aware of Ms. Pietrok's possible bias against Mr. Miller. Furthermore, it is rank speculation to say that the mere existence of an affair between Ms. Pietrok and Mr. Gillam evidences Ms. Pietrok's motive to exculpate Mr. Gillam by falsely inculpating Mr. Miller. This simply is not a case in which to find that either Mr. Miller or Mr. Gillam was guilty.
 
 
 9
 Finally, even assuming the district court did err, the error is harmless. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).
 
 
 10
 When the confrontation clause is violated by a restriction on the scope of cross-examination, the Supreme Court has instructed reviewing courts to consider "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Id. The factors to consider include the importance of the witness's testimony to the prosecution's case, whether the testimony was cumulative, whether there was evidence corroborating or contradicting the witness, the extent of cross-examination actually permitted, and the overall strength of the prosecution's case. Id.
 
 
 11
 In this case, Ms. Pietrok professed no direct knowledge on the critical issue of when Mr. Miller actually hand-wrote the severance policy changes in the manual. Instead, the evidence on this point was largely circumstantial, based on, among other things, the credibility of Mr. Miller's claim that he revised the severance policy in October 1987 but left the hand-written changes in his drawer until the next year; the fact that Mr. Miller's copy of the manual indicated in several places that he had dated some other changes in October and December 1988 (written over to read 1987 ); and the fact that the revised manual established greater severance benefits for a class of bank officials, "[Senior] Executive Officers," that otherwise were first differentiated from simple "Officers" in a manual revision dated April 1988.
 
 
 12
 Furthermore, there is little if any evidence, other than Mr. Miller's own testimony, that contradicts Ms. Pietrok's testimony. Indeed, several witnesses, such as Dave Rehfeldt and James T. Stanley, corroborated aspects of her testimony. Considering all this in light of the wide latitude given defense counsel to cross-examine Ms. Pietrok, save the limitation on her relationship with Mr. Gillam, the record demonstrates beyond a reasonable doubt that the limitation on Mr. Miller's right to cross-examine Ms. Pietrok was harmless error.
 
 II. Expert Testimony
 A.
 
 13
 The decision to admit expert testimony is committed to the trial court's discretion. A decision to admit expert testimony must be reversed when the reviewing court determines that its admission was "manifestly erroneous." U.S. v. Kinsey, 843 F.2d 383, 388 (9th Cir.), cert. denied, 488 U.S. 836 (1988).
 
 B.
 
 14
 Mr. Miller argues that the trial court abused its discretion in allowing expert testimony by savings and loan examiner Stephanie Neil, a lawyer with the Federal Office of Thrift Supervision. More specifically, Mr. Miller contends that the court improperly allowed Ms. Neil to testify that the Forbearance Agreement between the Bank and the FSLIC had been breached, to prove that he had the criminal intent to violate 18 U.S.C. Secs. 657 and 1006.
 
 
 15
 The Government counters, arguing that Ms. Neil simply testified that the Forbearance Agreement required notice of severance policy changes, that no notice had ever been received, and that the regulators would not likely have approved such changes.
 
 
 16
 Evidence of the violation of a regulation may not be introduced to prove a criminal offense. United States v. Wolf, 820 F.2d 1499, 1505 (9th Cir.1987), cert. denied, 485 U.S. 960 (1988). Thus, the government should not be allowed to supply a missing element of a criminal charge by relying on a civil regulation requiring certain disclosures. Id.
 
 
 17
 Mr. Miller charges that Ms. Neil's testimony "constituted an opinion to defraud FSLIC and the [B]ank." [Blue Brief at 28.] Careful review of the record, however, convinces us that Ms. Neil's testimony was introduced to show motive for Mr. Miller's statements regarding the timing of the amended severance policy. She professed no knowledge, and offered no opinion, on whether Mr. Miller actually changed the severance policy prior to the effective date of the Forbearance Agreement. The district court cautioned the jury that evidence of a violation of a contract or banking regulation was not evidence of a violation of a criminal statute, but that such evidence may be considered in determining intent. Mr. Miller simply fails to sustain his burden of showing that the admission of Ms. Neil's testimony was erroneous. Accord United States v. Brown, 912 F.2d 1040, 1042 (9th Cir.1990).
 
 III. Reasonable Doubt Instruction
 A.
 
 18
 We review a given reasonable doubt jury instruction de novo to determine whether it is an accurate statement of the law. United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990). The test for determining the adequacy of a reasonable doubt instruction "is whether 'the supplemental instruction [ ] detract[s] from the heavy burden suggested by the use of the term "reasonable doubt" standing alone.' " United States v. Jaramillo-Suarez, 950 F.2d 1378, 1386 n. 10 (9th Cir.1991) (quoting United States v. Nolasco, 926 F.2d 869, 873 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 112 S.Ct. 111 (1991)).
 
 B.
 
 19
 District courts have discretion regarding whether to instruct a jury on reasonable doubt. Nolasco, 926 F.2d at 872. The district court used reasonable doubt instruction 3.03 from the 1992 Manual of Model Criminal Jury Instruction for the Ninth Circuit. Mr. Miller objected to the language defining proof beyond a reasonable doubt as proof "that leaves you firmly convinced that the defendant is guilty."
 
 
 20
 This Court previously entertained this contention in United States v. Velasquez, 980 F.2d 1275, 1278-79 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2979 (1993), and United States v. Garza, 980 F.2d 546, 555 (9th Cir.1992). In each of these cases, the instruction was upheld. It is well-established that a panel not sitting en banc may not overturn Ninth Circuit precedent. Nichols v. McCormick, 929 F.2d 507, 510 n. 5 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1226 (1992); United States v. Aguilar, 883 F.2d 662, 690 n. 25 (9th Cir.1989), cert. denied, 498 U.S. 1046 (1991). Nevertheless, Mr. Miller fails to give us a basis to distinguish this case from Velasquez and Garza. No compelling reason is asserted to rule contrary to those prior decisions. We reject Mr. Miller's contention that the district court's instruction on reasonable doubt was reversible error.
 
 IV. Sentencing Under Guidelines
 A.
 
 21
 Whether a defendant obstructed justice or accepted responsibility under the Guidelines is a factual determination we review for clear error. United States v. Fine, 975 F.2d 596, 599 (en banc) (9th Cir.1992); United States v. Christman, 894 F.2d 339 (9th Cir.1990). In reviewing under a clear error standard, we "give due regard to the opportunity of the district court to judge the credibility of the witnesses." 18 U.S.C. Sec. 3742(e).
 
 B.
 
 22
 Mr. Miller raises two related challenges to his two thirty-month sentences. First, he claims that the district court clearly erred in finding that he obstructed justice by perjuring himself at trial. Second, he claims that this erroneous finding caused the court to err in denying him sentencing credit for accepting responsibility.
 
 
 23
 Relying on the testimony of Ms. Pietrok, the Forbearance Agreement, and other physical evidence, the district court found that Mr. Miller perjured himself when he testified that he had amended the severance policy in 1987 rather than in 1988. The court further found that Mr. Miller's false testimony "go[es] to a material point--in fact, one of the central issues of the trial." [ER at 41.] As a result, the court felt compelled to deny downward adjustment for acceptance of responsibility.
 
 
 24
 Section 3C1.1 of the Sentencing Guidelines provides in part that if a defendant attempts to obstruct the administration of justice, the offense level shall be increased by two levels. Application note 1(c), in effect at the time of the offenses here, provides that testifying untruthfully concerning a material fact at trial warrants an upward adjustment.
 
 
 25
 Section 3E1.1 of the Guidelines provides that if a defendant clearly demonstrates acceptance of responsibility for his or her offense, the offense level shall be decreased by two levels. Ordinarily, however, a defendant is precluded from an offense level reduction under Sec. 3E1.1 when the sentencing court enters a finding that he or she obstructed justice under Sec. 3C1.1. See United States v. Rafferty, 911 F.2d 227, 231 (9th Cir.1990).
 
 
 26
 Here, Mr. Miller argues that the trial court failed to find that Mr. Miller willfully intended to testify untruthfully, and that his testimony concerning when he entered changes to the severance policy in the manual was not "material." Therefore, he urges, the trial court's decisions to apply Sec. 3C1.1 and deny him the benefit of Sec. 3E1.1 were clearly erroneous.
 
 
 27
 The Supreme Court recently addressed what constitutes an obstruction to justice under Sec. 3C1.1. United States v. Dunnigan, --- U.S. ----, 113 S.Ct. 1111 (1993); see United States v. Rubio-Topete, 999 F.2d 1334, 1340-41 (9th Cir.1993). The Court looked to what constitutes perjury under 18 U.S.C. Sec. 1621. The Court stated:
 
 
 28
 A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory. This federal definition of perjury by a witness has remained unchanged in its material respects for over a century. It parallels typical state-law definitions of perjury, and has roots in the law dating back to at least the Perjury Statute of 1563.
 
 113 S.Ct. at 1116 (citations omitted.)
 
 29
 Recognizing that not every accused who testifies at trial and is convicted will incur an enhanced sentence under Sec. 3C1.1 for committing perjury, the Court admonished that:
 
 
 30
 [I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out. When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if, as was the case here, the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury.
 
 113 S.Ct. at 1117 (citations omitted.)
 
 31
 Here, the trial court "affirmed the assessment of ... the probation report" that recommended enhancement "on the ground that defendant willfully attempted to impede the prosecution of an offense." [R.T. of October 9, 1992, at 46-47.] The court recognized the Supreme Court's concern in Dunnigan when it explained that "the finding of guilty by a jury does not itself ordinarily justify a conclusion that the defendant has obstructed justice." [Id. at 51.]
 
 
 32
 Moreover, before reviewing the evidence and rendering an oral decision on the matter, the district court explained:
 
 
 33
 I think there are several important parts of the evidence that has to be considered in making a determination as to whether or not Mr. Joseph Miller, and the testimony he gave at trial, gave untruthful testimony on a material issue. I think that what is important is perhaps the circumstances; because I think it's [sic] the circumstances that existed that helped to--at least helped me to resolve issues of conflict relating to the credibility of witnesses.
 
 
 34
 [ER at 39.] These statements are important for two reasons. First, they reflect the court's consideration of the elements of perjury. The court framed the issues before it in terms of deciding whether Mr. Miller gave "untruthful testimony," a characterization utterly inconsistent with mistaken testimony, and whether such untruthful testimony was "material." The court also explained how it went about deciding these issues, looking to the "circumstances" or facts of the case as presented at trial. It found Mr. Miller's testimony to relate to a central issue of the trial. Though the court also found that Mr. Miller gave false testimony during the trial, it did not specifically find that he "willfully intended" to testify falsely. Nevertheless, the trial court's consideration of the issue, as it explained during the sentencing proceeding, encompasses the factual predicate for a finding that Mr. Miller willfully intended to testify falsely. The court's characterization of the testimony as being "untruthful" and "false" stands solidly in support of this conclusion.
 
 
 35
 There being a factual predicate for each of the elements of perjury, we reject Mr. Miller's challenge of the trial court's application of Sec. 3C1.1. Because allowing Mr. Miller the benefit of Sec. 3E1.1 would be inconsistent with the application of Sec. 3C1.1, we also reject his contention relating to the application of Sec. 3E1.1.
 
 CONCLUSION
 
 36
 Mr. Miller's convictions and sentences are AFFIRMED. The case is REMANDED, however, so that the judgment of convictions can be corrected to conform with the record.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3